[Cite as *State v. Everhardt*, 2018-Ohio-1252.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                  CASE NO.  5-17-25

     v.

KORBEN R. EVERHARDT,             O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2017 CR 179

Judgment Affirmed

Date of Decision:   April 2, 2018

APPEARANCES:

     *Howard A. Elliot* for Appellant

     *Phillip A. Riegle* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Korben Everhardt ("Everhardt"), brings this appeal from the August 24, 2017, judgment of the Hancock County Common Pleas Court sentencing Everhardt to an aggregate 5-year prison term after Everhardt pled no contest to, and was found guilty of, Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with a firearm specification pursuant to R.C. 2941.145. On appeal, Everhardt argues that the juvenile court improperly transferred this case to the general division of the common pleas court pursuant to R.C. 2152.12.

*Relevant Facts and Procedural History*

{¶2} On November 20, 2016, Everhardt went to a parking lot to engage in a fistfight with T.G., a 17-year-old male who was dating Everhardt's ex-girlfriend. Everhardt brought a 9mm handgun to the scene and he shot T.G. in the stomach. T.G. suffered significant injuries requiring immediate surgery, though he ultimately survived the gunshot wound.

{¶3} On November 21, 2016, a complaint was filed in the Hancock County Common Pleas Court, Juvenile Division, alleging that Everhardt was a delinquent child by means of committing Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree if committed by an adult. A specification was attached

alleging that if Everhardt was an adult he would be subject to a firearm specification under R.C. 2941.145, as he used a Hi-Point 9mm handgun to facilitate the offense.

{¶4} On November 21, 2016, the State filed a "Motion to Relinquish Jurisdiction," requesting that Everhardt's case be transferred to the general division of the common pleas court.

{¶5} On May 22, 2017, the Juvenile Court held a hearing on the State's motion to relinquish jurisdiction. At the inception of the hearing, the parties entered into a number of stipulations. They included, *inter alia*,

> **2. The alleged delinquent child, [Everhardt]'s date of birth is February 15, 2000 and he was sixteen (16) years of age on the date of the acts charged in the Complaint[;]**
>
> **\* \* \***
>
> **5. [Everhardt] stipulates to this Court finding that Probable Cause exists as to the acts charged in the Complaint. \* \* \***
>
> **6. More specifically, \* \* \* on November 20, 2016, [Everhardt] shot [T.G.] \* \* \* in the stomach with a Hi-Point Model C-9, 9mm Luger handgun \* \* \* at approximately 5:25 p.m., in the Family Center parking lot located \* \* \* in the City of Findlay, in Hancock County, Ohio. Further, the parties stipulate and agree that said handgun was test-fired by Detective Matthew Tuttle of the Findlay Police Department on December 6, 2016, and the same was found to be a properly functioning firearm[;]**
>
> **7. The parties further stipulate that [T.G] suffered serious physical harm \* \* \* as a result of the acts charged in the Complaint as defined in Ohio Revised Code §2901.01(A)(5)[.]**
>
> **\* \* \***

Case No. 5-17-25

**19.** **The parties herein stipulate to the admission into evidence of * * * a photograph of a screen shot of [Everhardt's] Facebook posting pointing a handgun taken at 6:02 p.m. on November 20, 2016 [the date of the incident], and said photo was posted on Facebook three (3) hours earlier [prior to the incident][.]**

**\* \* \***

**23.** **Likewise, the parties stipulate to the admission into evidence * * * of [a search on Everhardt's cell phone that read] "How many years do you get for attempted mu[.]"**

**\* \* \***

**29.** **The parties hereby stipulate that on November 20, 2016, the date of the acts charged in the Complaint * * * Everhardt, was awaiting adjudication for:**

**a)** **a juvenile tobacco offense contrary to Ohio Revised Code §2151.87 in Hancock County Juvenile Court No. 20162197 which was filed on August 30, 2016 and the same was subsequently dismissed without prejudice by this Court on December, 2016, due to other pending matters; and**

**b)** **a delinquency offense of Possession of Drugs, which would be a minor misdemeanor if committed by an adult contrary to Ohio Revised Code S2925.11(A) and 2152.02, from the alleged date of violation of September 22, 2016, in Hancock County Juvenile Court Case No. 20162223, and said matter is still pending in this Court[.]**

**30.** **The parties agree and stipulate that [T.G.] was unarmed during the incident[;]**

**31.** **Also, the parties stipulate and agree that the only weapon the police found in the vehicle that [the victim] traveled to the Family Center * * * in was a small folding knife[.]**

(Doc. No. 1o, Journal Entry of Stipulations).

-4-

{¶6} In addition to various factual stipulations, the parties stipulated to the admission of more than 40 exhibits including, *inter alia*, T.G.'s medical records, photographs of T.G.'s injuries and scarring, a surveillance video of the shooting, and psychiatric/psychological evaluations of Everhardt. The stipulations were reduced to writing and signed by the parties and the juvenile court judge.

{¶7} With Everhardt stipulating to his age and the existence of probable cause in this case, the juvenile court proceeded to hold a hearing on the remaining prong of discretionary transfer, specifically whether Everhardt was amenable to treatment in the juvenile justice system. Two witnesses provided testimony at the hearing, beginning with Rich Schmidbauer, the director of the juvenile detention center where Everhardt had been confined.

{¶8} Schmidbauer testified as to Everhardt's conduct while he had been in the detention center. Schmidbauer indicated that Everhardt's behavior toward others in the detention center was "very nearly predatory." (Tr. at 23). Schmidbauer testified that Everhardt treated his misdeeds like a joke, such as when he violated rules by spitting in the hallway or telling another individual to hang himself. Schmidbauer also testified that Everhardt initiated contact with other children while in detention and made "constant comments" verbally, that "walked right up to the point of there being threats of fist fights." (Tr. at 31).

{¶9} Schmidbauer testified that as a result of Everhardt's behavior he was kept separate from the other children. Although Everhardt was not kept in solitary confinement, as that was not done at this facility for juveniles, he was kept "physically apart from the other kids." (Tr. at 31). Schmidbauer testified that Everhardt regularly cursed at staff, that he was disciplined for relentlessly teasing another individual, and that there was an incident where he attempted to elbow an officer and had to be taken to the ground. Schmidbauer indicated there was another incident wherein Everhardt threw his shoe at another individual. Everhardt also purportedly stabbed another individual with a sharpened pencil. Reports from the detention center, which were included in the record, indicated that Everhardt was often reprimanded for bullying.

{¶10} Schmidbauer indicated that children were typically in his center for only two weeks and Everhardt was there for a number of months. Schmidbauer testified that he was unsure what to do with Everhardt due to his behavior so he sought help from Timothy Brown, the executive director of the Wood County Juvenile Court. Schmidbauer testified that once Brown began meeting with Everhardt, there was a marked improvement in Everhardt's behavior and compliance.

{¶11} Timothy Brown then testified at the hearing. He indicated that he began meeting with Everhardt in March of 2017. Brown testified that he thought

having Everhardt meet with someone who was outside of his system and would not be disciplining him might help him adjust.

{¶12} Brown testified that when he was brought in to intervene Everhardt was "bad." (Tr. at 92). Brown believed that Everhardt was easily influenced by his peers but he found Everhardt to be self-reflective and that Everhardt wanted to change. Brown thought Everhardt might respond well to professional help, so he got Everhardt into counseling. Brown indicated that since he had started meeting with Everhardt, the behavior of Everhardt had improved and Brown no longer had the same concerns that he had previously for the safety of his facility.

{¶13} At the conclusion of the hearing, the trial court indicated that it would take the testimony and all the stipulated exhibits under advisement and rule accordingly. Of the most notable information in the exhibits, there were the psychological/psychiatric evaluations of Dr. Tennenbaum and Dr. Sherman opining that Everhardt was not mature enough for transfer to adult court. The reports from Everhardt's stay in the juvenile detention center were also included as exhibits, as were the hospital records of the victim, T.G.

{¶14} On June 5, 2017, the Hancock County Common Pleas Court, Juvenile Division, filed its judgment entry transferring Everhardt and binding him over to the Hancock County Common Pleas Court. In its entry, the juvenile court addressed all factors found in R.C. 2152.12(D) and (E), where relevant, related to transfer. The

juvenile court noted the factors that favored transfer, the factors that did not favor transfer, and those that were inapplicable in these circumstances. Ultimately the juvenile court determined that "after a full review and weighing of the factors in favor of and against transfer of jurisdiction, this Court hereby GRANTS the motion to relinquish jurisdiction. The Court finds that the premeditation by the child, the callousness displayed by the child in the commission of this offense, and the severity of the crime charged provides the Court with NO reasonable assurance of public safety for the community if this child were to remain in the juvenile system." (Doc. No. 1s).

{¶15} On June 13, 2017, Everhardt was indicted in the Hancock County Common Pleas Court for one count of Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. The indictment contained a specification pursuant to R.C. 2941.145 alleging that Everhardt displayed, brandished, possessed, or used a 9mm Hi-Point handgun to facilitate the offense.

{¶16} Although Everhardt originally pled not guilty, he later tendered a plea of no contest to the charge and the specification. The parties jointly recommended a mandatory prison sentence of 3 years on the firearm specification and 2 years in prison on the Felonious Assault charge, consecutive to each other, for an aggregate 5-year prison term. The trial court accepted Everhardt's pleas, had the State recite

a factual basis for the charges, and then found Everhardt guilty. Afterward the trial court imposed the jointly recommended sentence.

{¶17} A judgment entry memorializing Everhardt's conviction and sentence was filed August 24, 2017. It is from this judgment that Everhardt appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The Hancock County Juvenile Court erred and abused its discretion in deciding that the Defendant/Appellant should be bound over to the Hancock County Common Pleas Court to be treated as an adult.**

{¶18} In his assignment of error, Everhardt argues that the juvenile court abused its discretion in determining that Everhardt should be bound over to the Hancock County Common Pleas Court. He argues, in part, that the juvenile court did not place enough emphasis on the evaluations by mental health professionals indicating Everhardt was amenable to rehabilitation in the juvenile justice system, and Brown's testimony regarding Everhardt's vast improvement since Brown's intervention during Everhardt's detention.

Standard of Review

{¶19} The Supreme Court of Ohio has consistently applied the abuse-of-discretion standard in the review of discretionary-transfer proceedings from juvenile court to the general division of common pleas court. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, ¶ 14; *State v. Watson*, 47 Ohio St.3d 93, 95 (1989). "[A]n

amenability hearing is a broad assessment of individual circumstances and is inherently individualized and fact-based. Thus a juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system is reviewed by an appellate court under an abuse of discretion standard." *In re M.P.*, at ¶ 14. An abuse of discretion is a decision that was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. "As long as the [juvenile] court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the [juvenile] court abused its discretion in deciding whether to transfer jurisdiction." *State v. Phillips*, 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711, ¶ 39.

The Transfer Process

{¶20} Revised Code 2152.12 governs the transfer of a child from the juvenile court to the general division of the common pleas court. *State v. Easley*, 10th Dist. Franklin No. 16AP-9, 16AP-10, 2016-Ohio-7271, ¶ 7. Under R.C. 2152.12(B), a juvenile court has the discretion to transfer a case for criminal prosecution if the court finds that three conditions are met. First, the child must have been 14 or older at the time of the alleged offense. R.C. 2152.12(B)(1). Second, the juvenile court

must determine that probable cause exists to believe that the child committed the alleged offense. R.C. 2152.12(B)(2). Third, the juvenile court must find that "[t]he child is not amenable to care or rehabilitation within the juvenile system" and that "the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(3).

{¶21} The first two requirements of R.C. 2152.12(B) are not in dispute in this case as the parties stipulated that Everhardt was 16 at the time of the alleged offense and that probable cause existed to believe that Everhardt committed the offense. The main focus of this action is on R.C. 2152.12(B)(3), as to whether Everhardt was amenable to care or rehabilitation within the juvenile system and whether the safety of the community may require that the child be subject to adult sanctions.

{¶22} In determining whether Everhardt should be transferred from the juvenile system a juvenile court must examine factors in R.C. 2152.12(D) and (E) that weigh for and against transfer. In making this determination, the juvenile court is required to consider whether the factors indicating that the case should be transferred outweigh the factors indicating that the case should not be transferred. *Easley*, *supra*, at ¶ 8, citing *State v. Erwin,* 10th Dist. Franklin No. 09AP–918, 2012–Ohio–776, ¶ 8. The statutes are silent with regard to how a juvenile court should weigh these factors. Thus, the juvenile court has the discretion to determine

how much weight should be accorded to any given factor. *State v. Marshall,* 1st Dist. No. C–150383, 2016–Ohio–3184, ¶ 15.

**{¶23}** The factors favoring transfer are listed in R.C. 2152.12(D), which reads:

> **(D) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:**
>
> **(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.**
>
> **(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.**
>
> **(3) The child's relationship with the victim facilitated the act charged.**
>
> **(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.**
>
> **(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.**
>
> **(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.**

**(7)    The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.**

**(8)    The child is emotionally, physically, or psychologically mature enough for the transfer.**

**(9)    There is not sufficient time to rehabilitate the child within the juvenile system.**

The factors that weigh against transfer are listed in R.C. 2152.12(E), and read:

**(E)    In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:**

**(1)    The victim induced or facilitated the act charged.**

**(2)    The child acted under provocation in allegedly committing the act charged.**

**(3)    The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.**

**(4)    The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.**

**(5)    The child previously has not been adjudicated a delinquent child.**

**(6)    The child is not emotionally, physically, or psychologically mature enough for the transfer.**

**(7)    The child has a mental illness or intellectual disability.**

**(8)    There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.**

Juvenile Court's Analysis of R.C. 2152.12(D) and (E)

{¶24} In this case, the juvenile court addressed all of the factors in R.C. 2152.12(D) and (E), indicating the factors that the court determined favored transfer, the factors that did not favor transfer, and the factors that did not apply or were irrelevant.  The juvenile court issued a lengthy opinion providing its analysis of the factors.  In sum, the juvenile court found that regarding R.C. 2152.12(D), factors (D)(1), (D)(3), (D)(5), (D)(6), and (D)(7), favored transfer.  The juvenile court found that factors (D)(8) and (D)(9) did not favor transfer, and that factors (D)(2) and (D)(4) were irrelevant or inapplicable.  As to the factors weighing against transfer codified in R.C. 2152.12(E), the juvenile court determined that only (E)(5), (E)(6), and (E)(7) weighed against transfer, while the remaining (E) factors were inapplicable or did not weigh against transfer.  We will discuss the juvenile court's findings regarding the factors below, including pertinent evidence presented related to the factors.

{¶25} With regard to R.C. 2151.12(D)(1), it is not disputed that the victim in this case suffered serious physical harm, and the juvenile court found as much.  The parties actually stipulated that the victim suffered serious physical harm.  This stipulation is only further supported by the exhibits that showed the extent of the

gunshot wound and the extent of surgical and medical repair the gunshot required. The victim was also left with significant scarring.

{¶26} With regard to factor (D)(2), which concerns whether the age of the victim made him more vulnerable, the juvenile court made no finding under this factor favoring or disfavoring transfer. The victim was 17 at the time of the shooting. The juvenile court found that there was no indication his age made him more vulnerable. However, he was still classified as a child under Ohio law.

{¶27} With regard to factor (D)(3), the juvenile court determined that the relationship between Everhardt and the victim facilitated the offense, favoring transfer. The record indicated that Everhardt and the victim knew each other as the victim was dating Everhardt's ex-girlfriend. It was this relationship that caused them to convene for a fist fight on the night of the incident.

{¶28} Factor (D)(4) concerns gang activity or committing the alleged act for hire. There was no evidence of that here, and the juvenile court found that this factor did not apply.

{¶29} Factor (D)(5) concerns Everhardt's use of a firearm. Here the parties stipulated that Everhardt used a handgun and shot the victim. There is also a photograph in the record of Everhardt posing with the handgun shortly before the incident. The juvenile court found that this factor weighed in favor of transfer.

{¶30} Factor (D)(6) concerns whether Everhardt was awaiting adjudication as a delinquent child. The parties stipulated that Everhardt was, at the time of the act charged, awaiting adjudication as a delinquent child. Thus the juvenile court found that this factor favored transfer.

{¶31} Factor (D)(7) concerns whether any prior sanctions or programs indicated that rehabilitation of the child would not occur in the juvenile system. Under this factor, the juvenile court noted Everhardt's behavior when he first entered the juvenile detention center and the description of him as a "predator, plain and simple." (Tr. at 53). The juvenile court then went on to note that Everhardt had apparently improved since meeting with Timothy Brown.

{¶32} Nevertheless, the juvenile court found that Everhardt's change in behavior was questionable given that the timing coincided with knowledge of the impending amenability hearing. The juvenile court found that the "records show that Everhardt is compliant when things go his way, but very noncompliant when they do not." (Doc. No. 1s). Thus while the juvenile court noted that there was conflicting evidence on this factor, it ultimately determined that the factor favored transfer.

{¶33} The juvenile court addressed factors (D)(8) and (D)(9) together, which concern whether Everhardt was emotionally, physically, or psychologically mature enough for the transfer and whether there was sufficient time to rehabilitate him

within the juvenile system. Under these factors, the juvenile court acknowledged that the evaluations performed by Dr. Sherman and Dr. Tennenbaum indicated that Everhardt was *not* emotionally, physically and psychologically mature enough for the transfer and that both evaluators determined there was sufficient time to rehabilitate him in the juvenile justice system.

{¶34} However, the juvenile court noted that many of the assertions made by the doctors relied on self-reporting by Everhardt, some of which the juvenile court found was inaccurate. The juvenile court went on to identify and analyze a number of the inaccuracies that Everhardt had self-reported to the doctors, such as his claim that he was under the influence of alcohol at the time of the incident. Nevertheless, the juvenile court ultimately concluded that despite the self-reported inconsistencies, the doctors were experts in their field and the juvenile court would accept their position that factors (D)(8) and (D)(9) weighed against transfer.

{¶35} After reviewing the factors in R.C. 2151.12(D), the juvenile court analyzed the factors weighing against transfer in R.C. 2152.12(E).[1] With regard to factor (E)(1), and whether the victim induced or facilitated the act, the juvenile court found that there was no evidence that the victim intended anything other than a fist fight and that Everhardt escalated the action.

---

[1] The juvenile court mislabeled these factors as (F) in its judgment entry.

{¶36} With regard to factor (E)(2) concerning whether Everhardt acted under provocation, the juvenile court noted that Everhardt was going to the location to fight with the victim, but it was only for a fist fight. The juvenile court made no finding under this factor.

{¶37} With regard to factor (E)(3) concerning whether Everhardt was the principal actor, the juvenile court found that as Everhardt was the principal actor, this factor did not weigh against transfer. Similarly, the victim did suffer serious physical harm, thus (E)(4) did not weigh against transfer.

{¶38} The juvenile court found that Everhardt had not been adjudicated delinquent at the time of the alleged act, weighing against transfer in factor (E)(5), and that (E)(6)/(7) weighed against transfer based on the doctors' reports stating that Everhardt was not emotionally, physically, and psychologically mature enough for transfer. Finally, with regard to factor (E)(8), the juvenile court found the level of security available in the juvenile system did *not* provide a reasonable assurance of public safety, thus the juvenile court determined that this factor did not weigh against transfer.

{¶39} On balance, the juvenile court weighed the evidence and reached the following conclusion.

> **Taking into account the number of services provided to Everhardt, his lack of motivation to change, his failure to take part in previous treatments, his plan in taking a firearm, his act of shooting another juvenile at close range, and his leaving the**

> **scene with seeking no assistance for the victim, the Court finds that the level of security available in the juvenile system does NOT provide a reasonable assurance of public safety.**
>
> **Based upon the testimony and evidence presented, and after a full review and weighing of the factors in favor of and against transfer of jurisdiction, this Court hereby GRANTS the motion to relinquish jurisdiction. The Court finds that the premeditation by the child, the callousness displayed by the child in the commission of this offense, and the severity of the crime charged provides the Court with NO reasonable assurance of public safety for the community if this child were to remain in the juvenile system.**

(Doc. No. 1s).

Argument and Analysis

{¶40} On appeal, Everhardt argues that the juvenile court's analysis and its ultimate judgment amounted to an abuse of discretion. Specifically, Everhardt takes issue with the juvenile court's failure to weigh the doctors' evaluations more heavily when balancing the factors. Everhardt also argues that he was doing better after his meetings with Brown and after going to counseling. Combining this with the doctors' evaluations indicating that Everhardt was not physically and emotionally mature enough for transfer, Everhardt argues that, on balance, the juvenile court abused its discretion and that there was actually sufficient time to rehabilitate him in the juvenile justice system. He contends this is particularly true given that he had a lower IQ, that he may have had some mental health issues, and that he was under some provocation.

**{¶41}** In its entry, the juvenile court went to great lengths to provide a thorough analysis of all the relevant factors that it was required to consider. The juvenile court even noted several factors that weighed in Everhardt's favor, including the doctors' evaluations. Everhardt urges this Court to diverge from the juvenile court's finding and place far greater weight on the opinions of the doctors and the observations of Everhardt's improvement in confinement by Mr. Brown.

**{¶42}** Notably, the juvenile court expressed some doubts about the authenticity of Everhardt's behavioral improvements and it further expressed doubt about the complete accuracy of the doctors' evaluations given that Everhardt was, at least to some extent, reporting incorrect information. Even with these reservations, the juvenile court still gave *some* weight and authority to the doctors' opinions.

**{¶43}** Importantly, a juvenile court is not bound by any expert opinion, and may assign *any* weight to the expert opinion that it deems appropriate. *Eastley*, 2016-Ohio-7271 at ¶ 15, citing *State v. Reeder*, 10th Dist. Franklin No. 15AP-203, 2016-Ohio-212, ¶ 24. Ohio appellate courts have routinely affirmed discretionary transfer determinations even where experts have opined that the juvenile is not mature enough for transfer or opined that the juvenile was otherwise amenable to rehabilitation in the juvenile justice system. *See State v. Morgan*, 10th Dist.

Franklin No. 13AP-620, 2014-Ohio-5661, ¶ 37; *Eastley* at ¶ 15; *Reader* at ¶ 24; *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184 ¶ 21.

**{¶44}** An abuse of discretion standard of review is deferential and does not permit an appellate court to simply substitute its judgment for the trial court. *State v. Dyer*, --- Ohio St.3d ---, 2017-Ohio-8758, ¶ 24. Here the evidence depicts that Everhardt committed a very serious crime with a firearm, which resulted in serious physical harm to the victim. The record notes a number of difficulties with Everhardt during his stay in the juvenile detention center. While there may have been some improvements in his behavior and the doctors may have recommended that Everhardt remain in the juvenile justice system, we cannot find that under these circumstances the juvenile court abused its discretion when considering all of the evidence before it. The juvenile court simply found that, on balance, the severity of the crime combined with a number of other factors outweighed the doctors' opinions that Everhardt could be rehabilitated in the juvenile justice system. Although not explicitly listed in R.C. 2152.12(D), the seriousness of the underlying offense is a factor to be considered in an amenability determination. *See, e.g.*, *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, ¶ 22. For all of these reasons, Everhardt's assignment of error is overruled.

*Conclusion*

**{¶45}** For the foregoing reasons Everhardt's assignment of error is overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**