[Cite as *In re M.A.*, 2019-Ohio-829.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|                    |   |                          |
|--------------------|---|--------------------------|
| IN THE MATTER OF:  | : |                          |
| M.A.               | : | CASE NO. CA2018-07-005   |
|                    | : | O P I N I O N<br>3/11/2019 |
|                    | : |                          |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2017-2264

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Georgetown, Ohio 45121, for appellee

Dever Law Firm, Scott A. Hoberg, 9136 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, M.A., appeals from his conviction and sentence he received in the Brown County Court of Common Pleas after he pled guilty to one first-degree felony count of rape. For the reasons outlined below, we affirm.

**Juvenile Court Proceedings**

{¶ 2} On August 7, 2017, a complaint was filed in the juvenile court alleging M.A., who was then 17 years old, was a delinquent child for having committed acts that if charged as an adult would constitute two counts of rape of a person less than 13 years old, both

first-degree felonies. The complaint also included three specifications alleging: (1) the victims of the offenses were less than 10 years old at the time of the offenses; (2) M.A. was a repeat violent offender; and (3) M.A. had previously been convicted of gross sexual imposition that included a sexually violent predator specification.

{¶ 3} Attached to the complaint was a probable cause affidavit that contained the following summary of facts:

> The Brown County Sheriff's Office received a report of illegal sexual conduct concerning the Defendant and two separate juvenile victims, both under the age of 10. During the subsequent investigation, after being advised of constitutional rights, while being both audio and video recorded; the Defendant admitted to digitally penetrating victim B.H. (7 yoa), anally. He advised that this occurred while in B.S.'s bed with S.A. present. The Defendant stated that he knew it was wrong while doing it, but couldn't help himself. The Defendant stated that he became sexually excited while the kids were talking about getting/being pantsed. Pantsed is the act of sneaking up on a target and pulling their pants down to cause embarrassment and done as a joke. During this same interview, the Defendant admitted to digitally penetrating S.A. (8 yoa), anally. This occurred about a week prior. This occurred at their home, in his cousins [sic] bedroom. He stated that he also fondled her breasts. He also stated that he masturbated to the memory, afterward.

{¶ 4} On August 15, 2017, the state moved the juvenile court to bind the matter over to the common pleas court as provided by R.C. 2152.12(B). Approximately three months later, the juvenile court held a hearing on the state's motion. As part of this hearing, the juvenile court heard testimony from Dr. Brian Griffiths. The record indicates Dr. Griffiths had previously conducted a clinical interview of M.A. to determine M.A.'s competency and amenability to care or rehabilitation within the juvenile system. It is undisputed that Dr. Griffiths set forth his findings in a detailed report that was thereafter submitted to the juvenile court.

{¶ 5} As for his testimony, Dr. Griffiths testified M.A. was a victim of "complex

trauma" that contributed to his behavior in raping each of the two child victims. Due to his complex trauma, Dr. Griffiths testified M.A. would need to undergo long-term and labor-intensive treatment. Dr. Griffiths also testified M.A. was a high risk to reoffend and that "[i]nterventions have done little to change his trajectory. It's like treatments and the sanctions aren't sticking so to speak. They've done little to influence his behavior." Concluding, Dr. Griffiths testified that "first and foremost it's – it's all about public safety. [M.A.] has been given repeated chances, and every chance is met with another victim." Dr. Griffiths report comports with this testimony.

{¶ 6} Following this hearing, the juvenile court issued an entry granting the state's motion to bind the matter over to the common pleas court. In so holding, the juvenile court found the parties had stipulated that the case could be bound over due to M.A.'s age and that there was probable cause to believe that M.A. committed the two rapes as alleged. The juvenile court also found that there were reasonable grounds to believe M.A. was not amenable to care or rehabilitation in the juvenile system and that the safety of the community required the case be bound over to the common pleas court so that M.A. could be subject to adult sanctions.

{¶ 7} In reaching this decision, the juvenile court found applicable those factors favoring a bindover listed under R.C. 2152.12(D)(1), (2), (3), and (6). As the juvenile court stated:

> (1) One of the victims was seven (7) years old at the time of the offense and the other victim was eight (8) years old at the time of the offense. Therefore, the Court finds the age of the victims exacerbated the physical or psychological harm.
>
> (2) One of the victims was [M.A.'s] cousin and the other was [M.A.'s] brother. Therefore, the Court finds that [M.A.'s] relationship with the victims facilitated the act charged.
>
> (5) [M.A.] was on felony probation out of this Court at the time of the offense, Case Number 2016-2176.

- 3 -

(6) [M.A.] received intensive intervention when he was placed in a residential treatment facility for a period of six (6) months and his actions have shown that rehabilitation will not occur within the juvenile system.

{¶ 8} The juvenile court also found the factors listed under R.C. 2152.12(D)(1)(7) and (8) applicable. Specifically, as the juvenile court found regarding the clinical interview and testimony of Dr. Griffiths:

(7) While Dr. Griffiths testified that [M.A] is not as mature as his same-aged peers, the Court finds that [M.A.] is mature enough for a transfer.

(8) Dr. Griffiths testified that he cannot give a timeframe as to the amount of time necessary to rehabilitate [M.A.], but that with his diagnoses of PTSD, complex trauma, and Unspecified Bipolar, these all require long-term treatment. This is coupled with the treatment required for sex offenders, which Dr. Griffiths testified is "labor intensive" and long-term. Based on the foregoing, the Court finds there is not sufficient time to rehabilitate [M.A.] within the juvenile court system.

{¶ 9} Concluding, the juvenile court found that none of the factors against a bindover listed under R.C. 2152.12(E) were present. Therefore, when taking into consideration the applicable factors under both R.C. 2152.12(D) and (E), the juvenile court found M.A. was "not amenable to care or rehabilitation within the juvenile system and that the safety of the public requires the legal restraint of [M.A.] beyond the age of his majority."

**Common Pleas Court Proceedings**

{¶ 10} On December 14, 2017, the Brown County Grand Jury returned a four-count indictment charging M.A. with three counts of rape of a person under the age of 13, all first-degree felonies, and one count of gross sexual imposition, a third-degree felony. M.A. appeared at his arraignment hearing the following day and entered a plea of not guilty to all four charges.

{¶ 11} On June 8, 2018, M.A. entered into a plea agreement and agreed to plead

- 4 -

guilty to one count of rape of a person under the age of 13 in exchange for the dismissal of the remaining charges. The plea agreement also included a jointly recommended and agreed upon sentence of life in prison with a possibility of parole after ten years. This sentence, if imposed by the common pleas court, was not subject to review in accordance with R.C. 2953.08(D)(1). Pursuant to that statue, "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." The plea form executed by M.A. included this same statutory language immediately above the signature line where M.A. acknowledged "[he] had read this form and I knowingly, voluntarily, and intelligently enter this Guilty Plea."

{¶ 12} The common pleas court held a plea hearing on M.A.'s change of plea later that same day. At this hearing, the common pleas court confirmed with M.A. that the plea agreement included a jointly recommended and agreed upon sentence of life in prison with the possibility of parole after ten years. The common pleas court then engaged M.A. in the necessary Crim.R. 11(C) plea colloquy. This included the following exchange:

> THE COURT: And, you understand if I find you guilty, and I sentence you, the matter has to be transferred back to juvenile court for amenability proceedings; do you understand that?

M.A. responded to the common pleas court by stating, "Yes, sir."

{¶ 13} The common pleas court also addressed M.A. regarding his appellate rights and stated:

> THE COURT: Lastly, [by pleading guilty] you're giving up your right to appeal any portion of this case that occurred, in this Court, other than, perhaps ultimately my sentence. And if you choose to appeal my sentence, a notice of appeal would have to be filed, within 30 days of me filing my sentencing entry, or you will have given up that right as well; do you understand that?

M.A. again responded to the common pleas court by stating, "Yes, sir."

{¶ 14} Following this exchange, M.A. entered a guilty plea to one count of rape. The common pleas court accepted M.A.'s guilty plea upon finding the plea was knowingly, intelligently, and voluntarily entered. The matter then proceeded immediately to sentencing. At sentencing, the common pleas court imposed the jointly recommended agreed upon sentence of life in prison with a possibility of parole after ten years. The common pleas court also designated M.A. a Tier III sex offender and notified M.A. that he would be subject to a mandatory five-year postrelease control term upon his release from prison.

{¶ 15} Concluding, the common pleas court stated:

> At this point in time, based upon Revised Code Section 2152.121(B)(3), the Court finds that the – had a complaint been filed in Juvenile Court, alleging [M.A.] was a delinquent child for committing the same offense to which he has not pled guilty, such offenses would not have required a mandatory bind-over, but would have allowed a discretionary transfer. It is, therefore, the order of the Court that the sentence imposed herein, of the 10 years to life, shall be stayed, pending completion of the procedure specified in the Revised Code 2152.121(B)(3), and the case is hereby ordered transferred back to Juvenile Court for proceedings consistent with that Code Section.

{¶ 16} Although previously advising M.A. that by entering a guilty plea that he was giving up his right to appeal his conviction, "other than, perhaps ultimately [the common pleas court's] sentence," the common pleas court issued a judgment entry of sentence that, for purposes of this appeal, stated:

> At said plea hearing, the Defendant agreed, in open court on the record, that pursuant to R.C. 2953.08(D)(1), a prison sentence of **Life in prison, with parole eligibility after 10 years**, was authorized by law and jointly recommended by the Defendant and the prosecution, and therefore not subject to review on appeal. The jointly-recommended sentence reflected the dismissal of 3 additional counts.

(Bold Text sic.)

{¶ 17} On June 26, 2018, the common pleas court issued an order rescinding the transfer of the case back to the juvenile court. As noted by the common pleas court, the

order rescinding the transfer was not necessary since the matter had previously been subject to an "amenability hearing" before the juvenile court. The common pleas court concluded by finding the order transferring the case back "to the juvenile court was in error and it is therefore ordered back to the Court of Common Pleas."

**Appeal**

{¶ 18} M.A. now appeals from his conviction and sentence, raising two assignments of error for review.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT 17-YEAR OLD [M.A.] WAS NOT AMENABLE TO TREATMENT IN THE JUVENILE SYSTEM, IN VIOLATION OF R.C. 2152.121; THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 21} In his first assignment of error, M.A. argues the juvenile court erred by granting the state's motion to bind the matter over to the common pleas court as provided by R.C. 2152.12(B). We disagree.

**Discretionary Bindover Proceedings Under R.C. 2152.12**

{¶ 22} Pursuant to R.C. 2152.12(B), the juvenile court was statutorily permitted to bind the case over to the common pleas court if the record supported the following three findings:

> (1) The child was fourteen years of age or older at the time of the act charged.
>
> (2) There is probable cause to believe that the child committed the act charged.
>
> (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

- 7 -

{¶ 23} M.A. does not dispute that the case could be bound over to the common pleas court due to M.A.'s age under R.C. 2152.12(B)(1). M.A. also does not dispute that, with respect to R.C. 2152.12(B)(2), there was probable cause to believe that M.A. committed the two rapes as alleged in the complaint. M.A. instead argues the juvenile court erred by finding he was not amenable to care or rehabilitation within the juvenile system. M.A. also argues the juvenile court erred by finding the safety of the community required that he be subject to adult sanctions as provided by R.C. 2152.12.(B)(3). We find no merit to M.A.'s claims.

{¶ 24} "Pursuant to R.C. 2152.12(B)(3), when deciding whether to transfer a juvenile to the adult court system, the juvenile court must consider and weigh certain statutory factors." *State v. Watkins*, 12th Dist. Clermont No. CA2017-03-013, 2018-Ohio-46, ¶ 14. This requires the juvenile court to "consider whether the factors in favor of a transfer listed in R.C. 2152.12(D) outweigh the factors against a transfer listed in R.C. 2152.12(E)." *State v. Allen*, 12th Dist. Butler CA2007-04-085, 2008-Ohio-1885, ¶ 7. The factors in favor of a bindover as listed in R.C. 2152.12(D) are:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.
>
> (4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
>
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised

Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

On the other hand, the factors against a bindover as listed in R.C. 2152.12(E) are:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 25} "Generally the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation." *State v. Watson*, 47 Ohio St.3d 93, 96 (1989). There is no

requirement that each statutory factor must be "resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment." *State v. Haynie*, 12th Dist. Clinton No. CA93-12-039, 1995 Ohio App. LEXIS 517, *13 (Feb. 13, 1995).

**Standard of Review: Discretionary Bindover**

{¶ 26} "A juvenile-court judge has the discretion 'to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.'" *Johnson v. Sloan*, Slip Opinion No. 2018-Ohio-2120, ¶ 6, quoting *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000). In turn, the juvenile court has wide latitude in making its determination whether to transfer a juvenile case to the common pleas court under R.C. 2152.12(B). *State v. Rice*, 12th Dist. Butler No. CA2016-01-005, 2016-Ohio-5372, ¶ 9. As a result, the question is not whether this court would have reached the same decision to relinquish jurisdiction. The question instead is whether the juvenile court abused its discretion in reaching that conclusion. *State v. Phillips*, 12th Dist. Clinton No CA2009-03-001, 2010-Ohio-2711, ¶ 38, citing *State v. Hopfer*, 112 Ohio App.3d 521, 535 (2d Dist.1996).

{¶ 27} An abuse of discretion is more than an error of law or judgment. *State v. Ellis*, 12th Dist. Butler No. CA2018-03-043, 2018-Ohio-5293, ¶ 17. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, ¶ 14. Therefore, as long as the juvenile court considered the appropriate statutory factors listed in R.C. 2152.12(D) and (E), and there is some rational basis in the record to support the juvenile court's findings when applying those factors, the juvenile court did not abuse its discretion in deciding whether to bind the matter over to the common pleas

court. *Phillips*, 2010-Ohio-2711 at ¶ 39.

**Analysis**

{¶ 28} Just as the juvenile court found, M.A. concedes that his two child rape victims suffered serious physical and psychological harm as a result of his conduct. M.A. also concedes that his conduct in raping the two child victims was likely exacerbated due to the fact both victims were under the age of 13; one being eight years old whereas the other was seven years old. M.A. further concedes the other factors in favor of a bindover as set forth by Dr. Griffiths in his report submitted to the juvenile court. Specifically, as noted by Dr. Griffiths in this report:

> Evaluation findings suggest the presence of the following factors which would support transfer pursuant to ORC 2152.12(D):
>
> 1. The victim's physical or psychological vulnerability or age exacerbated the physical or psychological harm.
>
> 2. The child's relationship with the victims facilitated the act in charge.
>
> 3. At the time of the acted charge, the child was under a community control sanction for a previous delinquent child adjudication.
>
> 4. The results of any previous sanctions and interventions did not seem to be beneficial in extinguishing the delinquent behavior.

{¶ 29} Rather than disputing these findings, M.A. argues the common pleas court erred by granting the state's motion since "little weight" should be given to his prior community control sanctions and inpatient intervention programs. As noted above, the community control sanctions and inpatient intervention programs were the result of his previous adjudication as a delinquent child after he was found to have committed an act that if charged as an adult would constitute gross sexual imposition. This is because, according to M.A., he was not able to complete the required inpatient intervention programs

due to purported funding issues.

{¶ 30} M.A. argues his inability to complete the inpatient intervention programs is further conflated by the fact that he was not provided with the necessary outpatient treatment upon his release, but was instead "placed with someone who was not a responsible family member." M.A. therefore argues that because he was unable to complete the mandated inpatient intervention programs due to no fault of his own, "it is impossible to determine whether there is an indication that rehabilitation would be unable to occur." We disagree.

{¶ 31} While certainly creative, M.A.'s argument fails to consider Dr. Griffiths' testimony and report submitted to the juvenile court. As noted above, Dr. Griffiths testified M.A. was a victim of "complex trauma" that contributed to his behavior and would require him to undergo long-term and labor-intensive treatment. Dr. Griffiths also testified M.A. was a high-risk to reoffend and that "[i]nterventions have done little to change his trajectory. It's like treatments and the sanctions aren't sticking so to speak. They've done little to influence his behavior."

{¶ 32} In addition to this testimony, Dr. Griffiths testified that "first and foremost it's – it's all about public safety. [M.A.] has been given repeated chances, and every chance is met with another victim." Dr. Griffiths' report comports with this testimony. Therefore, when considering Dr. Griffiths' testimony and report submitted to the juvenile court for review, the record is replete with evidence indicating that merely ordering M.A. to undergo treatment in the juvenile system was not appropriate in this case. M.A.'s claim otherwise lacks merit.

{¶ 33} M.A. also argues the juvenile court failed to truly appreciate his emotional and psychological immaturity, mental health issues, and age when deciding to grant the state's motion. This, according to M.A., indicates the juvenile court engaged in an "unreasonable application" of the factors contained in both R.C. 2152.12(D) and (E). The record, however,

indicates the juvenile court did take all of these factors into consideration when issuing its decision. It is therefore clear that M.A. merely disagrees with the weight the juvenile court attributed to these factors. But, "[t]he statutes are silent with regard to how a juvenile court should weigh these factors. Thus, the juvenile court has the discretion to determine how much weight should be accorded to any given factor." *State v. Everhardt*, 3rd Dist. Hancock No. 5-17-25, 2018-Ohio-1252, ¶ 22, citing *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, ¶ 15. M.A.'s claim otherwise again lacks merit.

{¶ 34} M.A. next argues the juvenile court erred by granting the state's motion since the juvenile system could provide him with more salient rehabilitative services when accounting for his limited cognitive development. That may very well be true. M.A., however, would not be without any rehabilitative services simply because the case was transferred to the common pleas court. The juvenile court, exercising its wide latitude in determining whether to bind this case over to the common pleas court, found that a bindover was necessary. The juvenile court reached this decision upon finding M.A. was "not amenable to care or rehabilitation within the juvenile system and that the safety of the public requires the legal restraint of [M.A.] beyond the age of his majority." When considering the facts and circumstances of this case, coupled with the need to protect the public, the juvenile court did not err in reaching this decision. Therefore, finding no merit to any of the arguments raised herein, M.A.'s first assignment of error lacks merit and is overruled.

{¶ 35} Assignment of Error No. 2:

{¶ 36} THE COMMON PLEAS COURT ERRED WHEN IT PROVIDED [M.A.] SEVERAL INACCURATE STATEMENTS CONCERNING THE POSTURE OF HIS CASE AND HIS ABILITY TO ULTIMATELY APPEAL HIS SENTENCE.

{¶ 37} In his second assignment of error, M.A. argues the trial court erred by accepting his guilty plea since the plea was not knowingly, intelligently, and voluntarily

entered. We disagree.

**Standard of Review: Knowing, Intelligent, and Voluntary Guilty Plea**

{¶ 38} When a defendant enters a guilty plea in a criminal case, such as the case here, the plea must be knowingly, intelligently, and voluntarily made. *State v. Mosley*, 12th Dist. Warren No. CA2014-12-142, 2015-Ohio-3108, ¶ 6. "Failure on any of those points 'renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. McQueeney*, 148 Ohio App.3d 606, 2002-Ohio-3731, ¶ 18 (12th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To ensure that a defendant's guilty plea is knowingly, intelligently and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994, ¶ 10.

{¶ 39} As relevant here, pursuant to Crim.R. 11(C)(2), the common pleas court may not accept a defendant's guilty plea without first addressing the defendant personally and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 40} A guilty plea is invalid if the common pleas court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the court to verify the defendant understands the

constitutional rights he is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. On the other hand, the common pleas court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *State v. Floyd*, 12th Dist. Warren No. CA2016-09-077, 2017-Ohio-687, ¶ 14. Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effects of his plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12.

**Analysis**

{¶ 41} Although acknowledging the common pleas court "closely complied" with the requirements of Crim.R. 11(C), M.A. nevertheless argues the common pleas court erred by finding his guilty plea was knowingly, intelligently, and voluntarily entered since it provided him with inaccurate and inconsistent information at the plea hearing; namely, that by entering a guilty plea he was "perhaps" waiving his right to appeal his jointly recommended and agreed upon sentence. But, as this court has stated previously, "the failure to inform a defendant that a guilty plea waives certain rights on appeal is not one of the specifically enumerated rights the trial court is required to discuss during the Crim.R. 11 colloquy." *State v. Reynolds*, 12th Dist. Madison No. CA2018-02-005, citing *State v. Moxley*, 12th Dist. Madison No. CA2011-06-010, 2012-Ohio-2572, ¶ 13 ("[t]he fact that a guilty plea waives the defendant's right to contest various pretrial motions is not one of the specifically enumerated rights the trial court is required to provide in the Crim.R. 11 colloquy").

{¶ 42} Regardless, even assuming the common pleas court was required to notify M.A. that his guilty plea would waive certain rights on appeal, the common pleas court did not provide M.A. with any inaccurate or inconsistent information at the plea hearing. Again, as noted above, M.A. argues the common pleas court provided him with inaccurate and

inconsistent information that by entering a guilty by notifying him he was "perhaps" waiving his right to appeal his jointly recommended and agreed upon sentence.

{¶ 43} However, pursuant to R.C. 2953.08(D)(1), "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, *and is imposed by a sentencing judge*." (Emphasis added.) Because a jointly recommended and agreed upon sentence is unreviewable only if the sentence "is imposed by a sentencing judge," M.A. would have been well within his rights to appeal his sentence if the common pleas court had rejected the parties' agreed sentence at the sentencing hearing. Therefore, due to the limited application of R.C. 2953.08(D)(1), the common pleas court was correct when it informed M.A. that by entering a guilty plea he was "perhaps" waiving his right to appeal his sentence.

{¶ 44} Notwithstanding the fact that the common pleas court did not provide M.A. with any inaccurate or inconsistent information at the plea hearing, even if it did, there is nothing in the record to indicate M.A. would not have otherwise pled guilty. This is particularly true here when considering the plea form executed by M.A. included the statutory language found in R.C. 2953.08(D)(1) immediately above the signature line where M.A. signed acknowledging "[he] had read this form and I knowingly, voluntarily, and intelligently enter this Guilty Plea." Therefore, when considering the totality of the circumstances surrounding M.A.'s guilty plea, we find no merit to M.A.'s claim that his guilty plea was not knowingly, intelligently, and voluntarily entered as a result of the common pleas court providing him with any inaccurate and inconsistent information at the plea hearing.

{¶ 45} M.A. also argues the common pleas court erred by finding his guilty plea was knowingly, intelligently, and voluntarily entered since it notified him that if he pled guilty the

case would be "transferred back to the juvenile court for amenability proceedings" in accordance with R.C. 2152.121(B)(3). There is no dispute that the common pleas court incorrectly determined that statute was applicable to the case at bar. However, although the common pleas court was incorrect in its belief that R.C. 2952.121(B)(3) applied to this case, there is again nothing in the record to indicate M.A. would not have pled guilty had the common pleas court not informed him that R.C. 2152.121(B)(3) was applicable to the case bar.

{¶ 46} Simply stated, when again considering the totality of the circumstances surrounding M.A.'s guilty plea, we find no merit to M.A.'s claim that his guilty plea was not knowingly, intelligently, and voluntarily entered as a result of the common pleas court notifying him at the plea hearing that the case be "transferred back to the juvenile court for amenability proceedings." This is certainly true here when considering the generous plea agreement offered by the state and agreed sentence. Therefore, finding no merit to any of the arguments raised herein, M.A.'s second assignment of error likewise lacks merit and is overruled.

**Conclusion**

{¶ 47} The juvenile court did not err by granting the state's motion to bind the matter over to the common pleas court in accordance with R.C. 2152.12(B). The common pleas court also did not err by accepting M.A.'s guilty plea upon finding said plea was knowingly, intelligently, and voluntarily entered. This is because, as the record indicates, the common pleas court went to great lengths to ensure M.A. subjectively knew the effect of his guilty plea. Therefore, finding no merit to either of the two assignments of error raised, both M.A.'s conviction and sentence are affirmed.

{¶ 48} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.

- 17 -