[Cite as *State v. Harner*, 2025-Ohio-698.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-11-017 |
| | : | O P I N I O N |
| - vs - | | 3/3/2025 |
| | : | |
| NILEN HARNER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20230108

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Shannon M. Treynor, for appellant.

**BYRNE, P.J.**

{¶ 1} Nilen Harner appeals from his conviction for aggravated murder in the Madison County Court of Common Pleas. Harner argues that he did not knowingly, intelligently, and voluntarily enter his guilty plea. He also challenges his sentence. For the reasons discussed below, we affirm.

**I. Factual and Procedural Background**

{¶ 2} In 2023, multiple complaints were filed in the Madison County Court of Common Pleas, Juvenile Division, alleging that Harner (then age 17) was a delinquent child for having committed an act that if committed by an adult would have constituted the offenses of aggravated murder and murder.

{¶ 3} The complaints arose following allegations that Harner shot the victim, Jamie Crim, three times with a 9 mm firearm, causing Crim's death. The shooting incident occurred during a home invasion robbery in which Harner allegedly stole a quarter pound of marijuana from the victim.

{¶ 4} In June 2023, the matter proceeded to a probable cause/bind over hearing. Based on the evidence presented, the juvenile court found probable cause to believe that Harner committed the charged acts and bound him over to the Madison County Court of Common Pleas, General Division—that is, to adult court.

{¶ 5} In July 2023, a Madison County grand jury indicted Harner on the following counts: (1) Count One, aggravated murder, a violation of R.C. 2903.01(B) and an unclassified felony, with a firearm specification in violation of R.C. 2941.145(A); and (2) Count Two, murder, a violation of R.C. 2903.02(A) and an unclassified felony, with a firearm specification in violation of R.C. 2941.145(A). Harner entered not guilty pleas to both counts.

{¶ 6} Subsequently, Harner and the state negotiated a plea and jointly-recommended sentence. In November 2023, Harner appeared before the court for a plea hearing.

{¶ 7} At the hearing, the court stated that it understood that the terms of the plea agreement were that Harner would be entering a guilty plea to Count One, aggravated murder. In return, the state agreed to dismiss the gun specification to Count One as well as to dismiss Count Two in its entirety, including its gun specification. The court also

stated it understood that the parties would also be jointly recommending an agreed sentence, consisting of a life sentence with eligibility for parole after 20 years.

{¶ 8}   Harner's counsel and the state agreed that these terms were accurate. Harner then signed a written plea agreement before the court.  The written plea form advised Harner of the three potential sentences he faced by pleading guilty to aggravated murder, which were mandatory terms of life in prison with a possibility of parole after 20, 25, or 30 years.[1]

{¶ 9}   The court reiterated the terms of the plea and the jointly-recommended sentence and Harner expressly stated that he understood those terms and was satisfied with the terms of the plea agreement.

{¶ 10}  The court then conducted a colloquy to ensure that Harner understood the ramifications of his plea.  This colloquy included the court advising Harner of the three potential life prison terms he faced by pleading guilty.   Harner acknowledged his understanding of the potential sentences he faced.  The court also advised Harner of the various constitutional trial rights he was waiving by entering the plea.   Harner acknowledged his understanding that he was waiving these rights.

{¶ 11}  Harner then pleaded guilty.  The court found that Harner's plea was made knowingly, intelligently, and voluntarily, and found Harner guilty.

{¶ 12}  Following the finding of guilt, the court asked Harner's counsel if Harner intended to waive the preparation of a presentence-investigative report, in light of the jointly-recommended sentence.  Harner's counsel agreed that Harner would waive the report.  Harner, Harner's counsel, and the state all agreed that the court should proceed with sentencing immediately.

---

1. At the plea hearing, the prosecutor noted that a term of life in prison without parole was not included in this list of possible prison terms because Harner was a juvenile at the time of the offense.  R.C. 2929.07(A).

{¶ 13} The court then proceeded to impose the jointly-recommended sentence of life in prison with the possibility of parole after 20 years.

{¶ 14} Harner appealed and raised two assignments of error.

## II. Law and Analysis

### A. Voluntariness of Guilty Plea

{¶ 15} Harner's first assignment of error states:

> THE DEFENDANT'S GUILTY PLEA WAS NOT MADE KNOWINGLY, INTELLIGENTLY OR VOLUNTARILY, AS THE COURT FAILED TO ADVISE THE DEFENDANT THAT HE WAS WAIVING ALL GROUNDS TO APPEAL BY ENTERING INTO AN AGREED SENTENCE.

{¶ 16} Harner argues that his plea was not made knowingly, intelligently, and voluntarily under Crim.R. 11 because the trial court failed to inform him at the plea hearing of the effect of entering into a jointly-recommended sentence under R.C. 2953.08(D)(1). Specifically, Harner argues that the court was required by Crim.R. 11 to inform him at the plea hearing that R.C. 2953.08(D)(1) would preclude him from appealing his jointly-recommended sentence.

### 1. Applicable Law – R.C. 2953.08(D)

{¶ 17} We first review the text of R.C. 2953.08(D). That statute provides in relevant part:

> (1) A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.
>
> . . .
>
> (3) A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section.[2]

---

2. R.C. 2929.02 to 2929.06 address the penalties for convictions of murder and aggravated murder.

{¶ 18} Based upon the plain language of R.C. 2953.08(D)(1), Harner's sentence is not reviewable by this court because the sentence was a jointly-recommended sentence that was authorized by law and was imposed by a sentencing judge.

{¶ 19} Moreover, based on the plain language of R.C. 2953.08(D)(3), the sentence is not reviewable because it was a sentence imposed for aggravated murder. We note, however, that the Ohio Supreme Court has held—despite the plain language of R.C. 2953.08(D)(3)—that an appellate court is *not* precluded from reviewing a sentence for aggravated murder when a defendant raises a constitutional claim regarding that sentence on appeal. *State v. Patrick*, 2020-Ohio-6803, ¶ 22. Harner has not raised a constitutional challenge to his *sentence* in this appeal. The only constitutional claim he raises is to the voluntariness of his plea.

{¶ 20} Accordingly, we proceed with the understanding that Harner is precluded, pursuant to R.C. 2953.08(D)(1) and (3), from challenging his sentence in this appeal.

### 2. Applicable Law – Voluntariness of a Plea

{¶ 21} "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Tipton*, 2021-Ohio-1128, (12th Dist.) ¶ 10, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179. "Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony." *State v. Bishop*, 2018-Ohio-5132, ¶ 11. The rule "ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). This requires the trial court to notify the defendant of the

constitutional rights set forth in Crim.R. 11(C)(2)(c). *State v. Oliver*, 2021-Ohio-2543, ¶ 41 (12th Dist.). This also requires the trial court to make the required determinations and give the necessary warnings set forth in Crim.R. 11(C)(2)(a) and (b). *Id.*

{¶ 22} Specifically, Crim.R. 11(C)(2) provides that, in felony cases, the trial court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest, without first addressing the defendant personally and doing the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant (understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 23} In *State v. Dangler*, 2020-Ohio-2765, "the Ohio Supreme Court addressed a trial court's compliance with Crim.R. 11(C) and the method of reviewing a trial court's plea colloquy to ensure that a defendant's plea is knowingly and voluntarily entered." *State v. Broughton*, 2021-Ohio-2987, ¶ 16 (12th Dist.). As the Ohio Supreme Court explained, aside from two exceptions, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16. The first exception occurs "[w]hen a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a

defendant waives by pleading guilty or no contest . . . ." *Id.* at ¶ 14. When this occurs, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* The second exception occurs as a result of "a trial court's *complete failure* to comply with a portion of Crim.R. 11[C]." (Emphasis in original.) *Id.* at ¶ 15. This, too, "eliminates the defendant's burden to show prejudice." *Id.* Therefore, as set forth in *Dangler*, the questions to be answered when reviewing a trial court's plea colloquy under Crim.R. 11(C) are threefold:

> (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

### 3. Analysis

{¶ 24} In this case, Harner does not dispute that he received the necessary constitutional advisements under Crim.R. 11(C)(2)(c). The only dispute is whether Harner's guilty plea was knowingly, intelligently, and voluntarily entered under Crim.R. 11(C)(2)(a) and (b) given that the trial court did not inform Harner that by pleading guilty and entering into a jointly-recommended sentence, he was waiving his right to appeal his sentence under R.C. 2953.08(D)(1).[3] Harner claims that such an advisement "fall[s] under the nonconstitutional advisements . . . governed by Civ. R. 11(C)(2)(a) and (b)." Harner cites no authority in support of this assertion.

{¶ 25} This court has held that "[t]he fact that a guilty plea waives the defendant's right to contest various pretrial motions [on appeal] is not one of the specifically enumerated rights the trial court is required to provide in the Crim.R. 11 colloquy." *State*

---

3. Harner does not argue that the court was also required to warn him of the effect of pleading guilty to aggravated murder under R.C. 2953.08(D)(3).

*v. Moxley*, 2012-Ohio-2572, ¶ 13 (12th Dist.). *Accord State v. Reynolds*, 2018-Ohio-4942, ¶ 12 (12th Dist.). Citing *Reynolds* and *Moxley*, we have also suggested that Crim.R. 11(C)(2) does not require a court to inform a defendant that by entering a guilty plea to a jointly-recommended sentence, he is waiving his to right to appeal that sentence. *In re M.A.*, 2019-Ohio-829, ¶ 41 (12th Dist.). In *M.A.*, the defendant argued that the trial court had erred by informing him at the plea hearing that by pleading guilty to a jointly-recommended sentence, he was "perhaps" waiving his right to appeal. *Id.* We rejected this argument, citing our precedent in *Reynolds* and *Moxley*. *Id.*

{¶ 26} Other courts have specifically found that Crim.R. 11(C)(2) does not require a court to inform a defendant of the effect of a jointly-recommended sentence on appellate rights. *State v. Thomas*, 2011-Ohio-214, ¶ 31 (8th Dist.) ("Crim.R. 11[C][2] does not require the trial court to inform a defendant that by pleading guilty, he or she is waiving his or her right to appeal a jointly-agreed sentence under R.C. 2953.08[D][1]."); *State v. Alvarez*, 2020-Ohio-5183, ¶ 23 (8th Dist.) ("Crim.R. 11[C][2] does not contain any language requiring a trial court to inform defendants of their appellate rights, or lack thereof, before accepting a plea."); *State v. Brown*, 2017-Ohio-9225, ¶ 20 (2d Dist.) (holding the same).

{¶ 27} We find no reason to reconsider our precedent set forth in *Moxley, Reynolds*, and *M.A.* There is no language in Crim.R. 11(C)(2) that would require a trial court to inform a defendant of the effect of a guilty plea on appellate rights, let alone the effect of a jointly-recommended sentence on appellate rights. Instead, the purpose of the rule is to ensure that the defendant understands the ramifications of sentencing following the plea, as well as the waiver of constitutional trial rights. *See* Crim.R. 11(C)(2). We are aware of no authority holding that a court must advise a defendant of the effect of a jointly-recommended sentence on appellate rights, and, as stated above, Harner has cited none.

{¶ 28} Even if we assume that the trial court was required to inform Harner of the effect of the guilty plea on his appellate rights under Crim.R. 11(C)(2)(a) or (b) (which it was not), and even if we assume that such was not a complete failure to comply with a portion of Crim.R. 11(C), we would not find that he has established prejudice. We note that Harner does not articulate in his appellate brief how he was prejudiced by the alleged failure to inform him of the effect of a jointly-recommended sentence under R.C. 2953.08(D)(1). But based on the record of the probable cause hearing, we observe that the evidence against Harner was overwhelming. Text conversations established that Harner and another person discussed robbing the victim of a quarter pound of marijuana. Text conversations also established that Harner was communicating with the victim about obtaining marijuana before the shooting. A doorbell camera recorded video of Harner going into the victim's home. Three gunshots are audible on the video and then Harner is seen on the same video leaving the victim's home. A firearm matching the caliber used in the shooting was recovered from Harner at the time of his arrest. Harner admitted to investigating police officers that he "took [the victim] for a QP"—meaning a quarter pound of marijuana.

{¶ 29} In light of this evidence, Harner cannot realistically argue that if he had known that he would lose the ability to appeal his sentence, he would not have entered the plea. The benefits to Harner in entering this negotiated plea agreement were obvious. The state dismissed Count Two as well as both firearm specifications. The court imposed the jointly-recommended sentence, which was the minimum sentence available. Had Harner proceeded to trial and been convicted, he could have been sentenced to life in prison with the possibility of parole after 25 or 30 years. And the two firearm specifications would have resulted in an additional consecutive 6-year prison term even though the

aggravated murder and murder charges would have merged under R.C. 2941.25. *See State v. Bollar*, 2022-Ohio-4370, ¶ 1; R.C. 2929.14(B)(1)(g).

{¶ 30} Other than the jointly-recommended-sentence argument, Harner challenges no other aspect of the trial court's compliance with Crim.R. 11(C)(2). Based on the foregoing, we conclude that the court did not err in its plea colloquy and Harner knowingly, intelligently, and voluntarily entered his plea. We overrule Harner's first assignment of error.

### B. Consideration of Harner's Youthful Age During Sentencing

{¶ 31} Harner's second assignment of error states:

> THE COURT ERRED BY NOT INDEPENDENTLY CONSIDERING THE YOUTHFULNESS OF THE OFFENDER, EVEN WHEN THE COURT IMPOSES LIFE IMPRISONMENT WITH THE POSSIBILITY OF PAROLE.

{¶ 32} With certain qualifications that are not relevant here, R.C. 2929.03(A)(1) provides the following options for the sentencing of a person convicted of aggravated murder: (1) life imprisonment without parole, (2) life imprisonment with parole eligibility after 20 years; (3) life imprisonment with parole eligibility after 25 years; and (4) life imprisonment with parole eligibility after 30 years. In the case before us, life imprisonment without the possibility of parole was not an available option because Harner was a juvenile at the time of the offense. R.C. 2929.07(A). Among the three remaining options, the parties jointly recommended a sentence of life imprisonment with the possibility of parole after 20 years and the trial court imposed that same sentence.

{¶ 33} Harner argues that the trial court erred by failing to consider his youthfulness before imposing the jointly-recommended sentence of life imprisonment with a possibility of parole after 20 years. Harner cites *State v. Patrick*, 2020-Ohio-6803, in support of his argument. As we already noted above, in *Patrick*, the Ohio Supreme Court

held that R.C. 2153.08(D)(3) does not preclude an appeals court from reviewing a sentence for aggravated murder when a defendant raises a constitutional claim regarding that sentence on appeal. *Id*. at ¶ 22. The supreme court also held that the aggravated sentencing scheme set forth in R.C. 2929.03(A) was not unconstitutional as it related to juvenile offenders, but that the Eighth Amendment and the Ohio Constitution, art. I, § 9 require a sentencing court to consider a juvenile offender's age as a factor in selecting among the R.C. 2929.03(A) sentencing options. *Id*. at ¶ 23-41.

{¶ 34} Here, the trial court did not need to consider Harner's age in selecting among the R.C. 2929.03(A) options because the state and Harner agreed upon a suitable sentence and the court imposed that sentence. R.C. 2953.08(D)(1) (providing that a jointly agreed sentence is not subject to appellate review). Though the Ohio Supreme Court in *Patrick* held that a juvenile offender's age must be considered despite the language in R.C. 2953.08(D)(3), it made no such holding with respect to R.C. 2953.08(D)(1), and in fact did not analyze R.C. 2953.08(D)(1) at all. Moreover, even if the court had erred in failing to consider Harner's age, any error would be harmless because the court imposed the minimum available sentence. *See* R.C. 2929.03(A)(1)(b). Thus, consideration of Harner's age would not have resulted in any lesser sentence. We overrule Harner's second assignment of error.

{¶ 35} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

- 11 -