[Cite as *State v. Crosby*, 2019-Ohio-2217.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                              Nos. 107392 and 107551

    v.                           :

DAPRI CROSBY,                            :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-626635-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carson Strang, Assistant Prosecuting Attorney, *for appellee.*

Timothy Young, Ohio Public Defender, and Victoria Bader, Assistant State Public Defender, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Dapri Crosby, appeals his convictions. He raises one assignment of error for our review:

The juvenile court abused its discretion when it determined that 17-year[-]old Dapri was not amenable to treatment in the juvenile system, in violation of R.C. 2152.12(B); Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10, of the Ohio Constitution.

{¶ 2} Finding no merit to his argument, we affirm.

## I. Procedural History and Factual Background

{¶ 3} In March 2018, Crosby was indicted on nine counts involving four separate burglaries that took place over a one-month span in May and June 2017. The charges included four counts of burglary in violation of R.C. 2911.12(A)(2), felonies of the second degree; two counts of criminal damaging in violation of R.C. 2909.06(A)(1), misdemeanors of the second degree; two counts of theft in violation of R.C. 2913.02(A)(1), misdemeanors of the first degree; and one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. One of the criminal damaging counts contained a furthermore clause that Crosby created a risk of physical harm to the victim. Additionally, one of the burglary counts carried a one-year firearm specification and two of the charges (burglary and concealed weapon) contained a weapon-forfeiture specification.

{¶ 4} The state requested that Crosby's case be transferred to adult court.[1] Crosby subsequently stipulated to probable cause, and the trial court held a hearing on the issue of amenability. The following facts were presented at the hearing.

---

[1] Crosby was 17 years old at the time of the offenses, but 18 years old at the time of the amenability hearing.

{¶ 5} Detective Michael Kitchen testified that he investigated a burglary that took place on May 21, 2017. Police obtained a fingerprint from the home, which belonged to Crosby. He stated that another person was involved in the burglary, but police were not able to identify that person.

{¶ 6} Teresa Evans-Guyton testified that her home was burglarized on May 31, 2017. She was at work when she received an alert on her cell phone from her doorbell camera, which also sends a video. She said that she could see someone who she did not know knocking at her door. She saw another young man in the driveway and then saw a car pull up to her house with "other males." There were four males involved. At that point, she called the police. As she was on the phone with the dispatcher, she saw three men proceed to the back of her house. A few minutes after that, while she was on the phone with the dispatcher, she got an alarm on her phone that someone had entered her back door. Evans-Guyton left work immediately. When she got there, the men were gone. They could be seen on the video running from her house and getting into the car that had pulled up earlier. Crosby could be seen in the doorbell video as the second male who rang Evans-Guyton's doorbell. He was the only male charged in this burglary.

{¶ 7} Evans-Guyton testified that she did not notice anything missing, but the back door to her house was damaged. Evans-Guyton stated that she was "terrified" as she "watched the entire thing unfold" and felt "violated." She said that she has lived in her neighborhood for a long time and nothing like this had ever happened before. She said that this incident gave her a "sense of fear and dread" to

come home. She has had a lot more anxiety since this incident and is "a lot more careful."

{¶ 8} Nancy McLaughlin testified that on June 1, 2017, she was at work when she received a call from her daughter who told her that their home security company called her to tell her that their security alarm was ringing at their house. McLaughlin did not work far from home, so she immediately drove home. While she was driving, she called the police who said they were already at her home. McLaughlin's television was missing, but nothing else. McLaughlin explained that she had damage to two windows and a door. McLaughlin testified that she was "angry" and "scared." She said that she had never had anything like that happen to her before this incident. After this incident, she installed alarms on her windows too. She stated that she was afraid to leave her house and is still "a little nervous about it." Her total loss amounted to approximately $1,300.

{¶ 9} Detective Martin Block testified that he investigated the burglary at McLaughlin's home. He said that police were able to lift fingerprints from the scene, and one of them belonged to Crosby. Detective Block further explained that at least one other male had been charged along with Crosby.

{¶ 10} Denise Lang testified that on June 26, 2017, someone broke into her home. She received a call about the burglary around 12:30 p.m. She left work immediately. When she arrived home, police were already there and had two suspects in custody, one of whom was Crosby. Lang's home was in "total disarray" and had been "ransacked." Lang stated that nothing was damaged or taken from

her home. She was upset to learn that the suspects had 9 mm guns on them. Lang stated that her daughter had just left before the suspects entered her home. She said that the incident "worried" her because her two adult children are "in and out" of the home all of the time and that she still thinks about it.

{¶ 11} Rondell Lewis testified that he is a placement aftercare coordinator for the Cuyahoga County Juvenile Court. Lewis "oversees OhioGuidestone." Crosby was placed at OhioGuidestone on October 24, 2016, which is when Lewis became his caseworker. Lewis described Crosby's criminal history as of the time of his placement, which began in 2013 and included numerous delinquencies for receiving stolen property, theft, criminal damaging, escape, carrying a concealed weapon, obstructing official business, probation violation, and assault.

{¶ 12} Lewis stated that Crosby was at OhioGuidestone until January 18, 2017, when he went AWOL and did not complete the program. Crosby was "discharged unsuccessfully," but he received many services while he was there. Some of the services included Thinking for a Change, which teaches children to focus on long-term decision-making, residential treatment, drug education, anger management, and psychiatric services. Lewis explained that Crosby had only been diagnosed with conduct disorder, so he did not require a lot of psychiatric services. Crosby was also enrolled in school while he was there.

{¶ 13} Lewis testified that prior to OhioGuidestone, Crosby was enrolled at Glen Mills School from October 17, 2015, to April 15, 2016. Lewis stated that while

Crosby did well at Glen Mills and actually completed the program, Crosby got into more trouble after he was released.

{¶ 14} The court asked Lewis why he thought Crosby had such a difficult time with services. Lewis stated that Crosby was easily influenced by peers, like in the current cases where there were multiple codefendants or codelinquents. Lewis said that Crosby does not "stop and think * * * how his decisions are going to affect him long-term." When he gets out of a program, he goes right back to those same peers who have a negative influence on him despite having a good support system from his aunt who has custody of him because his parents are deceased.

{¶ 15} Crosby had also been "on home detention a number of times," placed in "Cleveland Christian Home as a form of shelter care," and has been referred to some outpatient counseling programs. Crosby did not do well with the outpatient counseling programs "due to his lack of accountability." He also went AWOL from Cleveland Christian Home and home monitoring when he cut off his ankle monitor.

{¶ 16} Lewis stated that Crosby has also spent time in the juvenile detention center. Lewis was aware that Crosby had been transferred from the detention center because of behavioral issues, but he did not know exactly what happened. Crosby had never been sent to the Ohio Department of Youth Services.

{¶ 17} Lewis explained that Crosby was a "good kid when you sit down and you talk to him one-to-one." He said that Crosby is personable, intelligent, well-spoken, and respectful. But then when he is around his peers again, he makes bad choices and goes right back to criminal activity. Lewis stated that it is not very often

that a juvenile gets the opportunity to go to more than one residential placement, but Crosby did, and it still did not help him.

{¶ 18} Crosby was scheduled to have a psychological evaluation in February 2018, but he refused. Crosby's counsel, however, stipulated to an older psychological evaluation from September 2017. The state argued against stipulation, stating that when a juvenile refuses to submit to a psychological evaluation, he or she waives the right to have it admitted under R.C. 2152.12. The court overruled the state's objection and admitted the report.

{¶ 19} In the report, Dr. Joseph Konieczny stated that Crosby's "full scale I.Q. places him in the low average range of intellectual functioning for individuals his age." Dr. Konieczny further reported that Crosby "perceive[d] himself to be experiencing acute psychological turmoil" and "endorses feelings of anxiety, depression, and agitation." According to Dr. Konieczny, Crosby also "lacks self-confidence and self-esteem" and "likely harbors intense feelings of immaturity and insecurity." Dr. Konieczny stated that Crosby "is likely to rationalize his behaviors and is likely to accept little or no responsibility for his own behaviors." Dr. Konieczny diagnosed Crosby with "conduct disorder, adolescent onset type, severe" and "borderline intellectual functioning." There was no evidence, however, that Crosby "suffers from any major mental or psychiatric disorder that is affecting his ability to perceive reality."

{¶ 20} Dr. Konieczny concluded that there was only one factor that indicated Crosby would be responsive to rehabilitation in the juvenile justice system, which

was the fact that he showed "a positive adjustment during his placement at the Glen Mills School." Dr. Konieczny stated, however, that Crosby's criminal history dating back to 2013, his history of regular marijuana use, the fact that Crosby was on probation at the time of the current charges, and the fact that he was "beyond the age of majority," were all factors that indicated Crosby would not be responsive to rehabilitative care in the juvenile justice system.

{¶ 21} After considering all of the factors before it, the trial court found that Crosby was not amenable to rehabilitation in the juvenile justice system and bound Crosby's case over to the adult criminal court.

{¶ 22} In adult court, Crosby pleaded guilty to an amended indictment of three counts of burglary in violation of R.C. 2911.12(A)(3), third-degree felonies, and one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, with a one-year firearm specification.

{¶ 23} The common pleas court sentenced Crosby to two years for each of the felony-three burglary counts and six years for the felony-two burglary, to be served concurrent to each other and consecutive to one year for the firearm specification, for a total prison sentence of seven years. The court also informed Crosby that he would be subject to a mandatory three years of postrelease control upon his release from prison, and it waived court costs. It is from this judgment that Crosby now appeals.

## II. Discretionary Transfer of Jurisdiction

{¶ 24} Under Ohio's juvenile justice system, there are two types of transfer: mandatory and discretionary. *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 17 (8th Dist.), citing *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894.

> "Mandatory transfer removes discretion from judges in the transfer decision in certain situations. * * * Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety."

*Id.* at ¶ 17, quoting *D.W.*; R.C. 2152.12(A) and (B).

{¶ 25} In this case, Crosby was bound over to the adult court pursuant to a discretionary transfer that is governed by R.C. 2152.12(B), which provides:

> Except as provided in division (A) of this section [mandatory transfers], after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court at a hearing may transfer the case if the court finds all of the following:
>
> (1) The child was fourteen years of age or older at the time of the act charged.
>
> (2) There is probable cause to believe that the child committed the act charged.
>
> (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

{¶ 26} If the first two factors are met, then the juvenile court "must then continue the proceeding for a full investigation." *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12, citing R.C. 2152.12(C) and Juv.R. 30(C). R.C. 2152.12(C) requires the juvenile court to

> order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination.

{¶ 27} Crosby stipulated to probable cause and, thus, the only issue in this case is amenability. In making the amenability determination, the juvenile court must consider whether the applicable factors under R.C. 2152.12(D), indicating that the case should be transferred, outweigh the applicable factors under R.C. 2152.12(E), indicating that the case should not be transferred. R.C. 2152.12(B)(3); *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 8. Additionally, aside from the specifically enumerated factors, the juvenile court is instructed to consider "any other relevant factors." *Id.*, citing R.C. 2152.12(D) and (E). "The record shall indicate the specific factors that were applicable and that the court weighed." R.C. 2152.12(B)(3). Further, when the trial court determines a transfer is proper, the juvenile court "shall state the reasons for the transfer on the record." R.C. 2152.12(I); *see also* Juv.R. 30(G).

{¶ 28} We review a juvenile court's amenability determination under R.C. 2152.12 pursuant to an abuse of discretion. *Jones* at ¶ 9, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629. Indeed, a "juvenile court enjoys wide

latitude to retain or relinquish jurisdiction." *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989). And given the discretion afforded the juvenile court by the legislature in determining a juvenile's amenability to the juvenile justice system, "[i]f there is some rational and factual basis to support the trial court's decision, we are duty bound to affirm it regardless of our personal views of the evidence." *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.). To find that a trial court abused its discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

## III. Statutory Factors for Determining Amenability

{¶ 29} When determining whether to transfer a child to the trial court for adult prosecution, R.C. 2152.12(D) requires that a juvenile court consider the following relevant factors in favor of transfer:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a

violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 30} Additionally, R.C. 2152.12(E) requires that the juvenile court consider the following relevant factors against a transfer:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

**(8)** There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

## IV. Juvenile Court's Decision

{¶ 31} Regarding the statutory factors for and against transfer, the juvenile court found that the victims were not physically harmed, although it noted that burglaries are "devastating and very scary." The juvenile court also noted that one victim "clearly stated the psychological difficulty while in her home and continues to struggle with anxiety" and that "[a]nother victim has estimated $1,300 in valuables stolen."

{¶ 32} The juvenile court found that the victim did not have physical or psychological vulnerabilities and that Crosby did not know any of the victims. The court noted that there was no gang activity.

{¶ 33} With respect to a firearm, the juvenile court found that Crosby carried a firearm in one of the cases but did not brandish or use it.

{¶ 34} The juvenile court stated that Crosby had 12 additional cases stemming back to 2013.

{¶ 35} The juvenile court explained that Crosby had two previous placements rather than being placed in the Ohio Department of Youth Services ("ODYS"), which it noted was "really unusual." The court noted that Crosby "has received two separate placements, and although the youth successfully completed Glen Mills School, the youth has not benefited from either."

{¶ 36} Regarding whether Crosby was "emotionally, physically, or psychologically mature enough for transfer," the juvenile court stated: "Yes, you might have a low average range [of] intellectual functioning, but, you know, if you'd go to school, you'd get that up. That is a fluid graph that they use and you can actually be in the average range if you apply yourself." The court further stated that "although [Crosby] functions in the low average range of intellectual functioning, [he] is of a proper age."

{¶ 37} The court also found that there was not sufficient time to rehabilitate Crosby in the juvenile justice system. It stated:

> I don't believe there's sufficient time in the Juvenile System because we do only have three years with you and * * * because the [felonies] of the second degree are so severe, that you actually were with other people and had absolutely no fear of breaking into someone else's home, three years is not sufficient time. I've given you five years and you haven't even made a dent in all the things I've tried to do for you.

{¶ 38} In its judgment entry, the court added the following reasons:

(1) The testimony indicated that there were several youths for each incident, but that Crosby was the only one charged.

(2) The youth participated in several burglaries and on each occasion, there was property damage.

(3) The youth has been adjudicated on six additional cases.

(4) Pursuant to the psychological evaluation, testimony that the youth suffers from a mental illness.

(5) Although three years may appear sufficient for Crosby to be rehabilitated, Crosby has received services over the previous four years, and none has changed or altered his behavior.

{¶ 39} The trial court further stated in its judgment:

After full consideration of the youth's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the youth, including any prior commitments to the Department of Youth Services, the nature and severity of the offenses herein, the age, physical and mental condition of the victim as effected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the youth herein is not amenable to * * * rehabilitation within the juvenile system.

## V. Analysis

{¶ 40} In his sole assignment of error, Crosby contends that the juvenile court's decision transferring him to adult court was unreasonable for several reasons. First, Crosby argues the juvenile court made a single amenability determination despite the fact that there were three separate cases involving four incidents.

{¶ 41} Crosby points out that R.C. 2152.12(B) states that the juvenile court "may transfer *the* case" after making an amenability determination. He therefore maintains that the court was required to make separate amenability determinations for each case.

{¶ 42} Crosby is correct that the trial court only made one amenability determination for all of the cases. A number of the factors under R.C. 2152.12(D) and (E), however, address the juvenile's social, criminal, and mental histories and not any individual characteristics of a crime. Therefore, those factors would apply to all of the cases.

{¶ 43} The factors that do address the individual characteristics of each crime deal mostly with the victim of the crime, whether the juvenile committed the

crime alone or with others, and whether the juvenile used a weapon. In these cases, the facts of each crime were very similar. Crosby broke into a series of homes — most likely with other individuals — when the victims were not home. Although each of the victims testified to some degree of psychological harm, no one was physically harmed. One victim did suffer $1,300 in economic damage, but the fact that the other victims did not would not mean that the trial court could not transfer those cases; economic harm is one factor out of many. And although Crosby was found to have a gun in only one of the cases, the fact that he did not have a gun in other cases does not mean that the trial court could not transfer them. Again, having a gun is only one of many factors. Crosby committed some degree of the same crime in all of the cases — burglary. Burglary is a serious crime with serious consequences. The fact that the trial court only made one amenability determination based on Crosby's three cases was not unreasonable under the facts in this case.

{¶ 44} Next, Crosby maintains that the juvenile court failed to find that "the safety of the community may require that the child be subject to adult sanctions" as set forth in R.C. 2152.12(B)(3). This statute provides that the juvenile court must find that "[t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions."

{¶ 45} In this case, the trial court did not explicitly find that the safety of the community may require that the child be subject to adult sanctions. Nonetheless, we can discern from the record that the trial court considered the safety of the

community in making its determination.   The trial court explained that burglary is "devastating and very scary" and that felonies "of the second degree are so severe." The court further noted that Crosby was with other people when he committed the burglaries and "had absolutely no fear of breaking into someone else's home."   It also noted that despite four years of efforts of trying to rehabilitate him, he had not "even made a dent in all the things [it] tried to do for [him]."   Thus, it is clear that the trial court found that the safety of the community required Crosby to be tried in adult court.

{¶ 46} Crosby further argues that the juvenile court's decision to transfer Crosby to adult court was unreasonable because it failed to consider other dispositions available in the juvenile justice system.  He cites *State v. D.H.*, 2d Dist. Montgomery No. 26383, 2015-Ohio-3259, where the court held that the juvenile judge did not articulate why there was not enough time to rehabilitate the child in the juvenile system.  In *D.H.*, the court held that "[t]he juvenile court's entry under review contains insufficient factual findings to identify how the court reached its conclusion that D. H. could not be rehabilitated in the juvenile system."  *Id.* at ¶ 17. The court further explained:

> The record reveals that D.H.'s age at the time of the amenability hearing would have given him more than 3 years for rehabilitation in the juvenile system, and yet the juvenile court's findings contain no discussion of what rehabilitation goals can, or cannot, be accomplished in the juvenile system in a 3-year period, or what programs are, or are not, available in the juvenile system to accomplish these goals.

*Id.*

{¶ 47} *D.H.*, however, is distinguishable. Unlike Crosby who had an extensive juvenile delinquency record, D.H. only had one "unofficial" charge of misdemeanor theft, which had been "handled informally, without resulting in any juvenile delinquency record." *Id.* at ¶ 3. Other than that, D.H. did not have a prior criminal history nor had he spent any time in the juvenile system.

{¶ 48} In this case, the trial court specifically discussed how it had previously placed Crosby in two residential programs for juveniles where he received many services. Although Crosby completed one program, he committed more crimes soon after he was released. The judge then placed him in another program where he was receiving a number of services, but he left the program before he completed it. Thus, he was "unsuccessfully discharged."

{¶ 49} In addition to the two residential programs, Crosby had spent time on a home monitor that he cut off himself. He also went AWOL from a shelter care placement. Further, he had been transferred from a juvenile detention center because of behavioral issues. The juvenile court explained that Crosby had received services for four years and that nothing had "changed or altered his behavior."

{¶ 50} Crosby disagrees with the trial court's finding, asserting that his behavior is "largely influenced by peers," which he claims "does not indicate a lack of amenability to treatment, but rather a lack of maturity." Crosby maintains therefore that it was unreasonable for the trial court to conclude that he was not amenable to rehabilitation and treatment in a secure setting. We disagree. The juvenile court has broad discretion when determining whether to transfer a juvenile

to adult court. The juvenile court had overseen Crosby's cases for four years and had given him many opportunities in the juvenile justice system. In this case, Crosby had been charged with four second-degree felony burglaries. The trial court had the discretion to bind him over to adult court after considering and weighing all of the statutory factors.

{¶ 51} Finally, Crosby contends that the juvenile court failed to consider how he would fare in the adult criminal justice system. R.C. 2152.12, however, permits discretionary transfer of a juvenile to adult court if the juvenile court determines he or she is not amenable to being rehabilitated in the juvenile system after considering a number of factors. These factors require the court to consider whether the juvenile is "emotionally, physically, or psychologically mature enough for the transfer" and also whether the juvenile "has a mental illness or intellectual disability." Thus, R.C. 2152.12(D) and (E) factors ensure that a juvenile court has considered how a juvenile will fare in the adult system.

{¶ 52} While there is evidence in the record that could support the juvenile court retaining jurisdiction over this case, there is also evidence supporting the transfer. The court expressly based its decision upon Crosby's prior conduct in the juvenile system and failure of the juvenile justice system to rehabilitate him. There is nothing in the record to support Crosby's arguments that the juvenile court's decision to transfer him was based upon erroneous facts or that it was unreasonable, arbitrary, or capricious.

{¶ 53} Crosby's sole assignment of error is overruled.

**{¶ 54}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR