[Cite as *State v. Ramsden*, 2021-Ohio-3071.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-11-016 |
| | : | O P I N I O N |
| - vs - | | 9/7/2021 |
| | : | |
| CLAYTON RAMSDEN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 1950014


Andrew T. McCoy, Clinton County Prosecuting Attorney, and Danielle E. Sollars, Assistant Prosecuting Attorney, for appellee.

The Law Office of John D. Hill, LLC, and John D. Hill, Jr., for appellant.



**S. POWELL, J.**

{¶ 1} Appellant, Clayton Ramsden, appeals from his conviction in the Clinton County Court of Common Pleas after he pled guilty to two counts of aggravated vehicular homicide and one count of assault. In support of his appeal, Ramsden argues the Clinton County Court of Common Pleas, Juvenile Division, erred by exercising its discretion and

binding this matter over to the common pleas court so that Ramsden could be prosecuted as an adult. We disagree. Therefore, for the reasons outlined below, we affirm Ramsden's conviction.

**Facts and Procedural History**

{¶ 2} On May 8, 2019, a complaint was filed in the juvenile court alleging Ramsden, who was at that time 16 years old, was a delinquent child for having committed acts that if charged as an adult would constitute eight felony offenses: four counts of aggravated vehicular homicide, two counts of aggravated vehicular assault, and two counts of endangering children. The complaint was based on allegations that Ramsden, who did not yet have his driver's license, was driving erratically just prior to causing a horrific multi-vehicle accident on the evening of February 18, 2019 that resulted in the deaths of his girlfriend, Wendy Brewer, and his girlfriend's infant daughter, A.D.[1] The accident also caused another driver to sustain serious physical injuries to his foot. Ramsden likewise suffered serious physical injuries to his person that required him to spend several weeks in the hospital recuperating.

{¶ 3} On May 23, 2019, another complaint was filed in the juvenile court alleging Ramsden was a delinquent child for having committed acts that if charged as an adult would constitute two additional felony offenses: one count of trafficking in drugs and one count of possession of marijuana. This complaint was based on allegations that Ramsden was the subject of a traffic stop initiated during the early morning hours of March 11, 2019 after he was observed operating a vehicle without its headlights illuminated. Once the traffic stop was initiated, it was alleged that officers detected the odor of marijuana coming from the

___

1. The medical examinations of the two deceased victims in this case, Brewer and A.D., indicate that Brewer died of blunt force trauma, whereas A.D. died as the result of extensive internal and external burns. That is to say, unlike Brewer who died upon impact, A.D. was burnt alive.

vehicle. A subsequent search of the vehicle led to the discovery of two bags containing a total of 24 individually wrapped "homemade treats" under the vehicle's driver's and passenger's seats. The complaint indicates that these "homemade treats," which weighed over 200 grams, later tested positive for marijuana. The complaint also indicates that a passenger who had been riding in the vehicle with Ramsden, B.P., advised the officers at the scene that she and Ramsden were transporting the "homemade treats" with the intention of selling them.

{¶ 4} Once both of these complaints were filed with the juvenile court, the state moved the juvenile court to have both delinquency cases transferred to the common pleas court so that Ramsden could be prosecuted for his crimes as an adult. The state made these motions pursuant to Ohio's discretionary bindover statute, R.C. 2152.12(B). After the juvenile court concluded that there was probable cause to believe Ramsden committed all ten acts charged within those two complaints, and once an investigation and mental evaluation of Ramsden was completed, the juvenile court scheduled the matter for another hearing to determine Ramsden's amenability to care or rehabilitation within the juvenile system, and whether the imposition of juvenile sanctions would adequately protect the safety of the community.

{¶ 5} On July 2, 2019, the juvenile court held the aforementioned amenability hearing. During this hearing, the juvenile court heard testimony from four witnesses: Melissa Lipp, a former caseworker with Clinton County Children Services who was familiar with Ramsden as she had recently worked on a case involving Ramsden's mother; Samantha Woodruff, the assistant principal at Wilmington High School where Ramsden had attended school before he was expelled; Matthew Unger, the principal at Wilmington High School; and Dr. Lee Lehman, the chief deputy coroner with the Montgomery County Coroner's Office who performed the autopsies on the two deceased victims in this case,

Wendy Brewer and A.D. Ramsden did not testify at this hearing nor did Ramsden present any witnesses on his behalf.

{¶ 6} On July 9, 2019, the juvenile court issued a decision exercising its discretion to transfer both delinquency cases to the common pleas court so that Ramsden could be prosecuted for his crimes as an adult. At Ramsden's request, the juvenile court also issued an entry setting forth its findings of fact and conclusions of law in support of that decision. Within its findings of fact, the juvenile court found, in pertinent part, the following:

> The social history [set forth in the investigation conducted into Ramsden's background] revealed an unstable childhood and family life with multiple suspected incidents of neglect and abuse and questionable supervision of [Ramsden]. There were also reports that family members had concerns with [Ramsden] stealing money and using illegal substances, but no delinquency case concerning [Ramsden] has ever been brought before the Court. The mental evaluation revealed no mental illness or disabilities, but did state that [Ramsden] shows issues with substance abuse and poor decision making. The evaluator, Dr. Carla Dreyer, ultimately came to the conclusion that [Ramsden] would be amenable to rehabilitation, but stated that it would need to be considered in light of the seriousness of the offense.

{¶ 7} The juvenile court also found that Ramsden had "behavior and attendance issues in school." This included issues with Ramsden skipping class, fighting, and other rule violations while he was enrolled at Wilmington High School. The juvenile court further found that Ramsden's behavior issues ultimately resulted in Ramsden being expelled from Wilmington High School after it was discovered that Ramsden brought an unspent shotgun shell to school in his backpack.

{¶ 8} After setting forth its findings of fact, the juvenile court then set forth its conclusions of law. This included the juvenile court concluding that Ramsden was emotionally, physically, and psychologically mature enough to have both delinquency cases against him transferred to the common pleas court for adult prosecution. This also included

the juvenile court concluding that "while there may be time in the juvenile system for rehabilitation, the juvenile system will not provide for a reasonable assurance of public safety." In reaching this decision, the juvenile court stated:

> The Court finds the timeline of these allegations particularly troubling. On February 18, 2019, [Ramsden] was the driver in what was described as a horrific crash in which people [Ramsden] claims to have cared about lost their lives. [Ramsden] himself suffered several serious injuries that required prolonged hospitalization. Despite this, on March 11, 2019, exactly four (4) weeks after the traffic incident, [Ramsden] drove a car, unlicensed, with passengers. It was at this time that a large amount of marihuana edibles were found.

{¶ 9} Continuing, the juvenile court stated:

> The Court also takes into account the seriousness of the offenses charged in this case. While [Ramsden] has no prior delinquency history, [Ramsden] presents before the Court at this time charged with eight (8) serious felonies in one case and two (2) drug-related felonies in the second case. The gravity of these cases, one involving death and serious physical harm, not including property damaged, allegedly committed within less than a month of each other, indicates that [Ramsden] is not amenable to prosecution within the juvenile system despite the lack of prior delinquency record.

{¶ 10} Concluding, the juvenile court stated:

> It is particularly egregious that after [Ramsden] experienced the death of his girlfriend and her daughter, he felt fit to operate a vehicle again, especially when not properly licensed. [Ramsden's] behavior after the vehicular incident raises concerns that lead the Court to believe that the juvenile court cannot provide for a reasonable assurance of public safety.

{¶ 11} On July 10, 2019, the Clinton County Grand Jury returned a ten-count indictment charging Ramsden with the same ten felony offenses set forth in the two delinquency complaints discussed above: four counts of aggravated vehicular homicide, two counts of aggravated vehicular assault, two counts of endangering children, one count of trafficking in drugs, and one count of possession of marijuana. After several unrelated proceedings, Ramsden eventually entered into a plea agreement and pled guilty to two

counts of aggravated vehicular homicide and one count of assault. Ramsden entered his plea on September 19, 2020. The common pleas court accepted Ramsden's guilty plea and scheduled the matter for sentencing. At sentencing, which occurred on October 6, 2020, the common pleas court sentenced Ramsden to a total, aggregate term of five years in prison. The common pleas court also suspended Ramsden's driver's license for a period of ten years and notified Ramsden that he would be subject to an optional postrelease control term of up to three years upon his release from prison.

**Appeal**

{¶ 12} Ramsden now appeals from his conviction, raising the following single assignment of error for review

{¶ 13} THE JUVENILE COURT ABUSED ITS DISCRETION BY RELINQUISHING JURISDICTION OVER CLAYTON'S DELINQUENCY PROCEEDINGS AND BINDING HIM OVER TO THE CLINTON COUNTY COURT OF COMMON PLEAS, GENERAL DIVISION, FOR PROSECUTION AS AN ADULT.

{¶ 14} In his assignment of error, Ramsden argues the juvenile court erred by exercising its discretion and binding this matter over to the common pleas court so that he could be prosecuted for his crimes as an adult; specifically, he argues the court erred by finding that he was not amenable to juvenile sanctions and that the imposition of juvenile sanctions would not adequately protect the safety of the community. Ramsden supports these claims by arguing the juvenile court's decision, and underlying reasoning for binding this matter over to the common pleas court, was entirely speculative, without sound foundation, fundamentally baseless, and "completely contrary" to the evidence presented. We disagree.

{¶ 15} "Juvenile courts have exclusive initial subject matter jurisdiction in matters involving a child alleged delinquent for committing acts that would constitute a felony

- 6 -

offense if committed by an adult." *State v. Stephens*, 12th Dist. Butler No. CA2020-01-008, 2020-Ohio-5395, ¶ 9, citing *State v. Golphin*, 81 Ohio St.3d 543, 545 (1998). Pursuant to R.C. 2152.12(B), however, the juvenile court is statutorily permitted to bind the matter over to the common pleas court for adult prosecution if the record supports the following three findings:

> (1) The child was fourteen years of age or older at the time of the act charged.
>
> (2) There is probable cause to believe that the child committed the act charged.
>
> (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

This procedure is commonly referred to as a discretionary bindover. *State v. May*, 159 Ohio St.3d 106, 2020-Ohio-61, ¶ 3, citing *State v. Wilson*, 73 Ohio St.3d 40, 43 (1995); *State v. Watkins*, 12th Dist. Clermont No. CA2017-03-013, 2018-Ohio-46, ¶ 13.

{¶ 16} Given the facts of this case, the only dispute arises out of the requirement set forth in R.C. 2152.12(B)(3). That is, whether the juvenile court erred by finding Ramsden was not amenable to care or rehabilitation within the juvenile system, and that the safety of the community required that Ramsden be subject to adult sanctions. In making this decision, the juvenile court is required to consider whether the factors set forth in R.C. 2152.12(D) indicating the case should be transferred outweigh the factors set forth in R.C. 2152.12(E) indicating the case should not be transferred. R.C. 2152.12(B)(3). This is in addition to any other factor(s) the juvenile court may find relevant. R.C. 2152.12(D) and (E). This could include, for instance, the offender's remorse (or lack thereof) for the acts charged. *See State v. LaRosa*, 11th Dist. Trumbull No. 2018-T-0097, 2020-Ohio-160, ¶ 37 ("evidence pertaining to remorse of an offender is not improper for presentation to a juvenile court during an amenability determination").

- 7 -

{¶ 17} The factors indicating that a delinquency case should be transferred to the common pleas court are listed in R.C. 2152.12(D). Those factors are as follows:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 18} The factors indicating a delinquency case should not be transferred to the common pleas court are listed in R.C. 2152.12(E). Those factors are as follows:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

- 8 -

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 19} "There is no requirement that each statutory factor must be 'resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment.'" *In re M.A.*, 12th Dist. Brown No. CA2018-07-005, 2019-Ohio-829, ¶ 25, quoting *State v. Haynie*, 12th Dist. Clinton No. CA93-12-039, 1995 Ohio App. LEXIS 517, *13 (Feb. 13, 1995). However, while there is no requirement that each statutory factor must be resolved against the juvenile, it is nevertheless generally well-established that "'the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation.'" *State v. Rice*, 12th Dist. Butler No. CA2016-01-005, 2016-Ohio-5372, ¶ 12, quoting *State v. Watson*, 47 Ohio St.3d 93, 96 (1989); *State v. McDonald*, 2d Dist. Montgomery No. 11228, 1990 Ohio App. LEXIS 2289, *14-15 (June 5, 1990) ("[g]enerally, the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation").

{¶ 20} "A juvenile-court judge has the discretion 'to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.'" *Johnson v. Sloan*, 154 Ohio St.3d

476, 2018-Ohio-2120, ¶ 6, quoting *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000). In reaching this decision, the juvenile court enjoys a "wide latitude" in determining whether to transfer a juvenile case to the common pleas court for adult prosecution. *State v. Ramirez*, 12th Dist. Butler No. CA2010-11-305, 2011-Ohio-6531, ¶ 12, citing *State v. Watson*, 47 Ohio St.3d 93, 95 (1989); and *State v. Allen*, 12th Dist. Butler No. CA2007-04-085, 2008-Ohio-1885, ¶ 8. Therefore, given the wide latitude afforded to the juvenile court in cases such as this, "the question is not whether this court would have reached the same decision [as the juvenile court] to relinquish jurisdiction." *In re M.A.*, 2019-Ohio-829 at ¶ 26. The question is instead whether the juvenile court abused its discretion in reaching that decision. *State v. Phillips*, 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711, ¶ 38, citing *State v. Hopfer*, 112 Ohio App.3d 521, 535 (2d Dist.1996).

{¶ 21} An abuse of discretion means the juvenile court committed more than just an error of law or judgment. *State v. Ellis*, 12th Dist. Butler No. CA2018-03-043, 2018-Ohio-5293, ¶ 17. An abuse of discretion instead suggests that the juvenile court's decision was arbitrary, unreasonable, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. But, as this court has stated previously, so long as "the juvenile court considered the appropriate statutory factors listed in R.C. 2152.12(D) and (E), and there is some rational basis in the record to support the juvenile court's findings when applying those factors, the juvenile court did not abuse its discretion in deciding whether to bind the matter over to the common pleas court." *In re M.A.* at ¶ 27, citing *Phillips* at ¶ 39; *see, e.g., State v. Anderson*, 5th Dist. Delaware No. 14 CAA 05 0034, 2015-Ohio-888, ¶ 60 ("[b]ecause the court weighed the appropriate statutory factors and the record contains credible evidence that supports its findings, we cannot say that the court abused its discretion in transferring jurisdiction over this case to the adult court").

**Analysis**

{¶ 22} To support his single assignment of error, Ramsden does not argue that the juvenile court failed to consider the appropriate statutory factors set forth in R.C. 2152.12(D) and (E) when issuing its decision to bind this matter over to the common pleas court for adult prosecution. Ramsden instead argues the juvenile court erred by finding he was not amenable to juvenile sanctions, and that the imposition of juvenile sanctions would not adequately protect the safety of the community. According to Ramsden, this is because the juvenile court's finding was entirely speculative, without sound foundation, fundamentally baseless, and "completely contrary" to the evidence presented. Ramsden's argument, however, represents nothing more than a challenge to the weight that the juvenile court decided to attribute to each the factors set forth in R.C. 2152.12(D) and (E).

{¶ 23} As this court has stated previously, R.C. 2152.12(D) and (E) "are silent with regard to how a juvenile court should weigh these factors. Thus, the juvenile court has the discretion to determine how much weight should be accorded to any given factor." *In re M.A.*, 2019-Ohio-829 at ¶ 33, quoting *State v. Everhardt*, 3rd Dist. Hancock No. 5-17-25, 2018-Ohio-1252, ¶ 22, citing *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, ¶ 15 ("the juvenile court has the discretion to determine how much weight should be accorded to any given factor"). Therefore, given that it is the juvenile court, and not this court, that has the discretion to determine how much weight should be afforded to the factors set forth in R.C. 2152.12(D) and (E), Ramsden's challenge to the weight that the juvenile court ultimately decided to attribute to each those factors lacks merit.

{¶ 24} In so holding, we note that the record provides a clear rational basis to support the juvenile court's findings when applying the factors set forth in R.C. 2152.12(D) and (E) to the case at bar. Ramsden, a 16-year-old who had yet to obtain his driver's license, was observed driving erratically just prior to causing a horrific multi-vehicle accident that resulted in the deaths of his girlfriend, Wendy Brewer, and his girlfriend's infant daughter, A.D. The

accident also caused another victim to sustain serious physical injuries to his foot. Approximately four weeks later, Ramsden, who just days prior had been released from the hospital where he had been recuperating from the injuries he sustained in that same accident, was pulled over during early morning hours after he was observed operating a vehicle without its headlights illuminated. This traffic stop resulted in the discovery of 24 individually wrapped "homemade treats" containing marijuana that he and a passenger, B.P., were taking to be sold. This was in addition to the evidence indicating Ramsden suffers from substance abuse issues, exhibits poor decision making, and had been expelled from Wilmington High School for skipping class, fighting, and other rules violations. This includes Ramsden bringing an unspent shotgun shell to school in his backpack.

**Conclusion**

{¶ 25} Exercising its discretion provided to it under R.C. 2152.12(B), the juvenile court found that binding this matter over to the common pleas court was necessary under these circumstances. We agree. Therefore, finding no merit to any of the arguments raised by Ramsden herein challenging the juvenile court's decision to bind this matter over to the common pleas court so that he could be prosecuted for his crimes as an adult, Ramsden's single assignment of error lacks merit and is overruled.

{¶ 26} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.