[Cite as *State v. Foster*, 2023-Ohio-4308.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                       No. 112367

    v.                          :

KESHAWN FOSTER,                         :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 30, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656392-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and John Hirschauer, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant Keshawn Foster ("Foster") appeals from his convictions for attempted murder and numerous other offenses, claiming the juvenile court abused its discretion in transferring Foster's case to the general division. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On November 20, 2019, Foster was named in a 57-count complaint in the Cuyahoga County Common Pleas Court, Juvenile Division, related to numerous offenses allegedly committed in 2019. At the time, Foster was 14 years old.

{¶ 3} On January 23, 2020, Foster waived his right to a probable cause hearing in juvenile court.

{¶ 4} On July 29, 2020, the juvenile court held an amenability hearing.

{¶ 5} The state called numerous witnesses at the amenability hearing who testified as to details of the alleged offenses, Foster's ongoing involvement with the juvenile justice system, his psychological evaluation, and his personal history.

{¶ 6} The allegations in the complaint against Foster were that in separate incidents, Foster committed a string of violent offenses. One incident involved Foster stealing a car from someone at a gas station; the car was subsequently used in a drive-by shooting a week later, where Foster and another individual shot at another juvenile. Shortly thereafter, Foster and another individual shot at several people in a vehicle, causing two victims to crash their vehicle and sustain serious injuries as a result of gunshot wounds. Yet another incident took place approximately one month later, when Foster shot at individuals in the Garden Valley apartment complex in Cleveland, Ohio. Rounds from this shooting were recovered from two apartments in the complex. Later that month, Foster carjacked another victim at gunpoint. Several weeks later, Foster shot another individual in the stomach, causing the victim to sustain serious and lasting injuries. Shortly

thereafter, Foster and another individual carjacked another individual at gunpoint. When detectives from the Cleveland Division of Police's gang unit attempted to arrest Foster in the stolen vehicle from the most recent carjacking, Foster attempted to flee from police. Following a high-speed chase, during which Foster rammed the stolen vehicle into another car and almost hit an officer, Foster's vehicle was hit while driving through a red light. He was subsequently arrested and one of the firearms used in many of these incidents was recovered. The majority of the aforementioned conduct was captured on surveillance footage.

{¶ 7} In addition to testimony from a relative of one of the victims and a security guard at the Garden Valley apartment complex, Foster's probation officer testified at the amenability hearing. Kearran Capers ("Capers") testified that she worked as a probation officer at juvenile court. Capers testified as to Foster's previous involvement with juvenile court. Specifically, Capers testified that Foster was on probation for a 2018 theft case. She testified that while Foster was on probation, he was charged with aggravated robbery and robbery; those charges were later dismissed. Capers also testified that Foster violated his probation when he "went AWOL" (absent without leave) and was unsuccessfully terminated from home detention.

{¶ 8} Dr. Terry B. Pinsoneault ("Dr. Pinsoneault"), a psychologist at the juvenile court who conducts psychological evaluations, testified as to his evaluation of Foster and subsequent report. Dr. Pinsoneault testified as to Foster's familial and social history, his education, and his intellectual capabilities. Dr. Pinsoneault

testified that Foster's father had been incarcerated for most of Foster's life and was killed shortly after being released from prison and Foster had a difficult relationship with his mother. He also testified that Foster had an IQ of 73 and struggled in school.

{¶ 9} Finally, Detective Michael Harrigan ("Harrigan") of the Cleveland Division of Police's gang impact unit testified as to Foster's involvement with a gang known as the Spider Gang. Harrigan testified as to his 2019 investigation of the Spider Gang, stating that Foster was a known member of the gang and testifying as to numerous photographs shared on social media showing Foster and other members of the Spider Gang displaying firearms.

{¶ 10} Foster called Jane Petty, a mental health therapist, who testified that Foster's mental health and behavior improved during his time in juvenile detention.

{¶ 11} Following the amenability hearing, the juvenile court relinquished jurisdiction to the general division court after considering the factors set forth in R.C. 2152.12. In a corresponding journal entry, the juvenile court made the following findings:

> The court finds after a full investigation, including a mental examination of [Foster] by a duly qualified person, and after full consideration of the child's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the child, including prior commitments to the Department of Youth Services, the nature and severity of the offense herein, the age, physical, and mental condition of the victim as effected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the child herein is not amenable to care or rehabilitation within the juvenile system.

The court further finds that the safety of the community may require that the child be subject to adult sanctions.

The court considered the relevant factors in favor of transfer pursuant to R.C. 2152.12(D) and makes the following findings:

1. The victim suffered physical or psychological harm, or serious economic harm.

2. The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

3. The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of R.C. 2923.12, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

4. At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

5. The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

6. The child is emotionally, physically, or psychologically mature enough for the transfer.

7. There is not sufficient time to rehabilitate the child within the juvenile system.

The court further found that none of the relevant factors against transfer in R.C. 2152.12(E) applied to Foster.

{¶ 12} Upon transfer to the general division court, on January 27, 2021, a Cuyahoga County Grand Jury indicted Foster on 57 counts of a 65-count indictment. Foster initially pleaded not guilty to the indictment.

{¶ 13} Two years later, on January 9, 2023, Foster pleaded guilty to criminal gang activity in violation of R.C. 2923.42, grand theft in violation of R.C. 2913.02(A)(1), criminal damaging in violation of R.C. 2909.06(A)(1), felonious assault in violation of R.C. 2903.11(A)(1), felonious assault in violation of R.C. 2903.11(A)(2), two counts of attempted murder in violation of R.C. 2923.02 and 2903.02(A), two counts of having weapons while under disability in violation of R.C. 2923.13(A)(1), breaking and entering in violation of R.C. 2911.13, improper discharge of a firearm at or into habitation or school in violation of R.C. 2923.162(A)(3), aggravated robbery in violation of R.C. 2911.01(A)(1), and vandalism in violation of R.C. 2909.05(B)(2). Foster also pleaded guilty to multiple firearm specifications and forfeiture specifications. The state of Ohio and Foster's counsel proposed a recommended agreed prison sentence of 14 years in prison. The state asserted that one count of attempted murder was subject to the Reagan Tokes Law; defense counsel objected to the application of the Reagan Tokes Law.

{¶ 14} On January 20, 2023, the court accepted the recommended sentence and sentenced Foster to 14 to 15- and one-half years in prison, pursuant to Reagan Tokes. The court also ordered that Foster would receive jail-time credit for 1,172 days.

{¶ 15} Foster filed a timely notice of appeal and presents a single assignment of error for our review:

> The juvenile court abused its discretion by granting the state's motion to relinquish jurisdiction.

**Law and Analysis**

{¶ 16} In his sole assignment of error, Foster argues that the juvenile court abused its discretion by finding that Foster was not amenable to juvenile sanctions. Specifically, Foster argues that the juvenile court either did not appropriately weigh relevant factors against transfer or disregarded these factors entirely.

{¶ 17} In Ohio's juvenile justice system, there are two types of transfer: mandatory and discretionary. *State v. Crosby*, 8th Dist. Cuyahoga Nos. 107392 and 107551, 2019-Ohio-2217, ¶ 24, citing *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 17 (8th Dist.), citing *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894. While mandatory transfer removes discretion from judges in certain situations, discretionary transfer allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system and appear to be a threat to public safety.

{¶ 18} A juvenile court's amenability determination is reviewed for abuse of discretion. *Crosby* at ¶ 28, citing *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 9, and *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629. The term abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 19} In a discretionary transfer proceeding under R.C. 2152.12, the juvenile court may not transfer jurisdiction without first finding that (1) the child was 14 or older at the time of the offenses, (2) there is probable cause to believe that the child committed the offenses, and (3) "[t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(1)-(3). In the instant case, Foster does not dispute that he was 14 or older at the time of the offenses or that there was probable cause to believe that he committed the offenses. Therefore, this appeal is solely concerned with the third finding: whether Foster is amenable to care or rehabilitation within the juvenile system.

{¶ 20} In making the amenability determination under subdivision (B)(3), the juvenile court is required to consider whether the applicable factors under R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors under R.C. 2152.12(E) indicating that the case should not be transferred. R.C. 2152.12(B)(3). Neither list of factors is exhaustive, and the specific factors under consideration must be indicated within the record. *Id.* In light of "'the discretion afforded the juvenile court by the legislature in determining a juvenile's amenability to the juvenile justice system,'" the juvenile court's amenability determination cannot be reversed if "'there is some rational and factual basis to support the trial court's decision.'" *State v. Nicholson*, 8th Dist. Cuyahoga No. 110595, 2022-Ohio-2037, ¶ 206, quoting *Crosby*, 8th Dist. Cuyahoga Nos. 107392

and 107551, 2019-Ohio-2217, at ¶ 28, and *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.). No one factor controls over any other.

{¶ 21} Pursuant to R.C. 2152.12(D), the relevant factors in favor of transfer include:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 22} Pursuant to R.C. 2152.12(E), the relevant factors against transfer include:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 23} Foster argues that the fact that he went AWOL while on probation for prior offenses is insufficient to determine that he is not amenable to juvenile rehabilitation or that he was not responsive to previously implemented sanctions, such as community service and family therapy. Further, Foster argues that given the fact that he was a 14-year-old boy with a difficult family life and low intellectual function, it "is not surprising that Foster might have chosen to take to the streets rather than take it upon himself to find a mentor and perform community service." Finally, Foster argues that at the time of the amenability hearing, he was 15 years

old and had never been committed to the Ohio Department of Youth Services ("ODYS"), and there was no testimony that he had been placed at a correctional facility or residential facility; therefore, those sanctions were available for the juvenile court to attempt to rehabilitate Foster.

{¶ 24} "'An offender's disagreement with the way the juvenile court weighed the factors is not a reason to reverse the court's decision.'" *State v. Jordan*, 8th Dist. Cuyahoga No. 111547, 2023-Ohio-311, ¶ 12, quoting *State v. Cunningham*, 6th Dist. Lucas No. L-21-1136, 2022-Ohio-3497, ¶ 100, citing *State v. Ramsden*, 12th Dist. Clinton No. CA2020-11-016, 2021-Ohio-3071, ¶ 23.

{¶ 25} Our review of the record reveals that the trial court considered all of the relevant factors in favor of and against transfer and heard evidence related to each relevant factor. Further, the trial court's findings related to these factors are supported by competent, credible evidence.

{¶ 26} While Foster may disagree with the trial court's findings related to the statutory factors, this is insufficient to show that the trial court's findings somehow constitute an abuse of discretion. Because nothing about the trial court's determination that Foster was not amenable to juvenile court sanctions was unreasonable, arbitrary, or unconscionable, we decline to find the juvenile court's relinquishment of jurisdiction an abuse of discretion. Therefore, Foster's assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
SEAN C. GALLAGHER, J., CONCUR